Argued and submitted June 28, reversed and remanded September 13, 1995

# STATE OF OREGON,
## *Appellant,*

*v.*

# BROOKS ANDREW GILLILAND,
## *Respondent.*

## (93-4440-C-1; CA A86124)

902 P2d 616

Ann Kelley, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Dan Maloney, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before Riggs, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

The state appeals from a pretrial order allowing defendant to introduce evidence at trial of the complaining witness' purported past sexual behavior. OEC 412(3)(c). We reverse.

Defendant is charged with rape in the first degree, ORS 163.375, sodomy in the first degree, ORS 163.405, unlawful sexual penetration in the first degree, ORS 163.411, sexual abuse in the first degree, ORS 163.427, and two counts of sexual abuse in the second degree, ORS 163.425. Before trial and pursuant to OEC 412(3)(a) and (b), defendant notified the court of his intent to offer evidence of the complaining witness' past sexual behavior, arguing that the evidence was admissible to prove the witness' bias against defendant. At the hearing on the issue, the trial court heard testimony from the complaining witness, a nurse to whom the witness had made statements, a witness with whom the complaining witness had had consensual sexual intercourse and a witness with knowledge of the complaining witness' past sexual behavior. After the hearing, the trial court ordered that defendant could introduce this evidence at trial:

"1. That the alleged victim claimed to have been raped by Rod Silva in November, 1993; that the alleged victim did not report the alleged rape to law enforcement authorities; that the alleged victim continued to have sexual relations with Rod Silva after the alleged rape; that the alleged victim engaged in sexual acts with Rod Silva after the alleged rape in the presence of others, and the circumstances surrounding such acts; that the alleged victim told Brandon Haight that she had been raped by Rod Silva in 1993, prior to the incident in this case. That she later told Patti Hall that her claim to Haight that Silva had raped her was 'all a mistake.'

"2. That the alleged victim reported 'numerous episodes of rape' in the past to Susan J. Cotner, nurse attending alleged victim at Rogue Valley Medical Center, December 21, 1993; that none of such alleged episodes were reported to law enforcement authorities.

"3. That the alleged victim reported to Susan J. Cotner, attending nurse, that prior to December 21, 1993 she had received multiple treatments for sexual[ly] transmitted diseases.

"4. That the alleged victim had consensual sexual relations with Shay Freeman and Mark Hinton in 1993, prior to reporting this alleged rape. That during the course of her encounter with defendant on December 21, 1993, the alleged victim referred to her sexual relations with Messrs. Freeman and Hinton prior to the conclusion of the alleged sex act taking place with defendant."

The state argues that all of that evidence is inadmissible under OEC 412, which provides, in part:

"(1) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.427, or in a prosecution for an attempt to commit such a crime, reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime is not admissible.

"(2) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.427, or in a prosecution for an attempt to commit such a crime, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is:

"(a) Admitted in accordance with subsection (3)(a) and (b) of this section; and

"(b) Is evidence that:

"(A) Relates to the motive or bias of the alleged victim; or

"(B) Is necessary to rebut or explain scientific or medical evidence offered by the state; or

"(C) Is otherwise constitutionally required to be admitted.

"* * * * *

"(4) For purposes of this section:

"* * * * *

"(b) 'Past sexual behavior' means sexual behavior other than the sexual behavior with respect to which rape, sodomy or sexual abuse or attempted rape, sodomy or sexual abuse is alleged."

The state first assigns error to the admission of evidence regarding the complaining witness' prior accusations of rape against Silva. At the hearing, the witness testified at length regarding her relationship with Silva and her

accusation of rape against him. She said that she had lived with Silva for a period of time, and that her memory was impaired during that time because of her drug use. She acknowledged that on some occasions, she had engaged in consensual sexual intercourse with Silva. However, she also testified that Silva had raped her two or three times and that she had told a friend that Silva had raped her. She explained that, when she was later confronted by other friends in the presence of Silva, she told them that it "was all a mistake" because she was afraid of what Silva might do to her. One of the other witnesses testified that he had observed the complaining witness having forced sex with Silva and that he had also seen her engage in consensual sexual acts with Silva. He also said that the complaining witness continued to associate with Silva after the incident of forced sex.

Below, defendant argued that the evidence showed proof of motive or bias against defendant. Defendant now argues on appeal that the evidence is not evidence of past sexual behavior prohibited under OEC 412, but evidence of a prior false accusation which is admissible under our holding in *State v. LeClair*, 83 Or App 121, 730 P2d 609 (1986), *rev den* 303 Or 74 (1987). The state argues on appeal and argued below that the evidence is not admissible under either theory. However, it also points out that it is unclear on what basis the trial court ruled the evidence admissible. The state says:

> "This evidence at most suggested a generalized motive for the victim to dislike men, and to be biased against them. It failed to suggest any particular reason for the victim to falsely accuse defendant of raping her. If defendant was attempting to show that the victim had made a prior false complaint against another man, the evidence was still not admissible. The victim did not recant her accusation, and there was no strong evidence that the accusation was untrue."

We agree that the basis for the trial court's ruling is unclear.[1] In ruling that the evidence was admissible, the trial court said:

> "I think we have seen at least a picture of it. The thing that occurs to me is that in any case the veracity, reliability of

---

[1] The trial court's task was not facilitated by a clear expression by defense counsel of the theory of admissibility.

a witness as it relates to the specific issue in question is always admissible, and it seems to me that we not only here are offering evidence of the victim's past behavior, but we're talking about evidence, which viewed in its overall, is directly relevant to her veracity, her reliability in this particular instance. So I think its going to all have to come in."

The prosecutor questioned the basis for the ruling:

"I understand the * * * issue from the standpoint of the Court, and the fact that you want to deal with credibility, and I think that that's fine. We can all deal with credibility as far as it is reputation, and as far as it is with * * * opinion, but the * * * cases, the statutes and the case law state specifically that * * * specific instances of conduct cannot be brought in for determining credibility. So I think I need to understand what items are going to be used, or what items you're referring to when you talk about whether or not * * * this evidence can come in. Whether she's * * * unreliable, * * * not credible, all these people can probably talk about it as their opinion and as to * * * her reputation, but whether or not * * * she had sex or didn't have sex with [Silva] is, is certainly a specific —

"THE COURT: You're missing my point, Counsel.

"* * * * *

"THE COURT: As you watch a witness testify, as you hear the witness testify, as you hear incidents the witness has been involved in as they relate to the incident in question, the jurors have to decide who's telling the truth.

"It looks to me like in order to understand this young woman, and to arrive at a valid conclusion about whether she has the ability to recall, and the ability to accurately relate what happened, all of these things are a part of that mix, and I think to exclude these * * * items that [defendant] is seeking to offer, would be to exclude essential evidence relating to the reliability and credibility of the witness as it relates to this particular incident.

"I have not seen one before where the prior incidences were so much a part of the witness's credibility and reliability. We have the evidence offered by you suggesting that she was afraid of this fellow and therefore submitted. We have evidence by this witness that she would in front of groups of people initiate sexual contact with this person, of whom she was supposed to be very fearful. So it, it just gets to be all so mixed up that I don't see any way to segregate it out."

Based on the arguments presented to the trial court, there appear to be two bases for holding that the evidence was admissible. Either the evidence is evidence of past sexual conduct of the complaining witness, in which case OEC 412 governs, or it is evidence of a recantation of a prior false accusation. In *LeClair*, we held that evidence that a complaining witness had made prior false accusations of sexual abuse was not evidence of "past sexual behavior" under OEC 412. 83 Or App at 126-27. We also said that evidence of prior false accusations could be probative on the issue of the credibility of the complaining witness. *Id.* at 129. Nonetheless, OEC 608(2) prohibits the admission of specific instances of conduct for the purpose of impeaching a witness' credibility,[2] unless,

"[r]egardless of the prohibitions of OEC 608, the Confrontation Clause of Article I, section 11, requires that the court permit a defendant to cross-examine a complaining witness in front of the jury concerning other accusations she has made if 1) she has recanted them; 2) the defendant demonstrates to the court that those accusations were false; or 3) there is some evidence that the victim has made prior accusations that were false, unless the probative value of the evidence which the defendant seeks to elicit on the cross-examination (including the probability that false accusations were in fact made) is substantially outweighed by the risk of prejudice, confusion, embarrassment or delay." 83 Or App at 130.

If the trial court intended to admit the evidence to impeach the complaining witness' credibility, the trial court was required to make the findings set out in our holding in *LeClair* and should have limited defendant's evidence to an inquiry addressed to the complaining witness on cross-examination. If the trial court's intention was to admit the evidence as evidence of motive or bias under OEC 412, the trial court was required to find that the statements demonstrate a particular motive or bias against defendant. Evidence of a general bias against men is insufficient. *See State v. Barfield*, 79 Or App 688, 692, 720 P2d 394 (1986). Therefore,

---

[2] OEC 608(2) provides:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, other than conviction of crime * * * may not be proved by extrinsic evidence. Further, such specific instances of conduct may not, even if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness."

as to the evidence regarding Silva, we remand for the trial court to clarify its ruling.[3] *See State v. Hacker*, 51 Or App 743, 754-55, 627 P2d 11 (1981) ("Because we cannot determine * * * upon what theory each * * * piece of evidence was excluded, we remand for further proceedings.").

The state also argues that the complaining witness' statements to her attending nurse that she had received multiple treatments for sexually transmitted diseases is inadmissible under OEC 412. Defendant argues that the evidence is probative of her credibility, because the witness reported to the police that she had been sexually aroused by defendant's forcible act of cunnilingus. Defendant argues that in the light of her claim that she had been raped previously and that she had received multiple treatments for sexually transmitted diseases, an arousal would be improbable.

■    Furthermore, defendant asserts that the witness gave an inconsistent medical history to the nurse, telling her that she had received multiple treatments, and then later in the interview, saying she had been treated only two or three times. At the hearing, the complaining witness said that she had been treated only once for sexually transmitted diseases. OEC 412(1) provides that, "notwithstanding any other provision of law," reputation or opinion evidence of the "past sexual behavior" of a victim is not admissible. OEC 412(2) provides that, "notwithstanding any other provision of law," evidence of "past sexual behavior" of a victim other than reputation or opinion evidence is not admissible unless it qualifies under a statutory presumption.

> "The function of a 'notwithstanding' clause in [a] statute is to except the remainder of the sentence containing the clause from other provisions of a law that is referenced in that particular notwithstanding clause." *O'Mara v. Douglas County*, 318 Or 72, 76, 862 P2d 499 (1993).

The fact that the evidence may be relevant on the issues of the witness' credibility does not render it admissible under OEC 412. Defendant makes no other argument as to why such evidence would be otherwise admissible under OEC 412, nor is the evidence relevant regarding the prior accusations of

---

[3] The finding regarding the report of "numerous episodes of rape" pertains to the allegations made against Silva and is encompassed in the remand.

rape against Silva. The trial court erred in ruling that that evidence is admissible.

The state also argues that the court erred in ruling that evidence of consensual sexual acts with two other men is admissible. On the evening of the alleged assault, but before the alleged assault occurred, the complaining witness made a statement to defendant, "First Shay, then Mark, now you." Defendant moved to have the court admit testimony about the statement and the fact that the complaining witness had had consensual intercourse with Shay and Mark. At the hearing, the complaining witness explained the context of her statement:

"Q:   Okay. Explain your conversation. You were talking about how men had treated you bad[ly]. What were you telling him about how men had treated you?

"A:   Just how Shay, the way he had treated me.

"Q:   Was it badly?

"A:   He messed with my mind a lot. A lot of men play head games.

"Q:   A lot of men do?

"A:   Yeah.

"Q:   Did, did Shay rape you?

"A:   No.

"Q:   What did you mean then if you said, 'First Shay then Mark?'

"A:   See, it was before anything had happened. I meant how he had been treating me real bad [*sic*], telling me how pretty I was, using their stupid little, you know, remarks. Well, I'm not stupid. They don't have to play their little games and use their stupid little remarks.

"* * * * *

"A:   Because he kept telling me how pretty I was, and the same thing I was hearing from Shay and Mark. I'm not stupid.

"Q:   Are you saying that Shay and Mark as a prelude to having intercourse with you would tell you how pretty you were?

"A:   No. No, they always said it. Guys are always telling me how pretty I am, and it's just to get me in bed.

"Q: That, that's what I'm asking. You, you felt that being complimented by a man about your beauty was [a] subterfuge just to get you in bed and have sex with you?

"A: Some men, yes.

"Q: All right. And you're saying that [defendant] at that time was telling you you were pretty or something?

"A: He had never told me that before.

"Q: Okay. But he told you that this night?

"A: Yes."

Defendant does not argue that the statement is relevant to his own state of mind regarding his claim that the witness consented. Instead, he argues that evidence is admissible under OEC 412(2)(b)(A) as evidence of bias against him:

"[The victim] designates defendant in the same category as other persons who have taken advantage of her and now she seeks to accuse defendant of rape because men like defendant have treated her badly. This does tend to show a particular bias against defendant; he is the kind of man the alleged victim does not like and his conduct in complimenting her only as a prelude to sex is not right."

■ The fact that the complaining witness said that she believed that men used compliments as a subterfuge to induce her to have intercourse, and that she felt they were thereby mistreating her, does not demonstrate a motive to falsely accuse defendant of rape. As far as this record is concerned, there is no logical inference of bias or motive against defendant that arises from the testimony. We agree with the state that that evidence is not admissible.

Reversed and remanded.