Argued and submitted January 29, 1999, affirmed January 5, 2000

STATE OF OREGON,
*Respondent,*

*v.*

TAUL CUNNINGHAM,
*Appellant.*

(CF01075; CA A98831)

995 P2d 561

Bob Pangburn argued the cause and filed the brief for appellant.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

---

* Deits, C. J., *vice* Warren, P. J., retired.

EDMONDS, P. J.

Armstrong J., concurring in part and dissenting in part.

## EDMONDS, P. J.

Defendant appeals his convictions for sexual abuse in the first degree, ORS 163.427, attempted rape in the first degree, ORS 161.405; ORS 163.375, attempted sodomy in the first degree, ORS 161.405; menacing, ORS 163.190, and assault in the fourth degree, ORS 163.160. He makes two assignments of error: (1) The trial court erred by not conducting a hearing on the issue of defendant's mental fitness to stand trial; (2) The trial court erred when it excluded evidence under OEC 412 of the victim's sexually transmitted disease. We affirm.

Trial in this matter was scheduled for June 25, 1997. On June 23, defense counsel filed the following "motion to continue":

"The grounds for this motion are:

"1. It is the opinion of defense counsel that the defendant is mentally unable to assist in the preparation of the trial of his case and unable to comprehend facts necessary for him to make a knowledgeable decision regarding whether or not to accept an offered plea bargain in this case.

"2. Defense counsel has been denied reasonable and necessary access to his client in order to prepare for trial.

"3. To date, defense counsel has been unable to acquire evidence relating to the psychological and neurological condition of the defendant. This evidence is vital to the preparation of a defense in this case."

In support of his motion to continue the trial date of June 25, defense counsel submitted the following affidavit:

"1. I am the defense attorney in this case.

"2. I have attempted face-to-face visits with my client, the defendant in this case, in order to discuss plea offers and to prepare for trial in the event any plea offers are rejected. To date, I have not had the access to my client necessary to accomplish these objectives.

"3. The jail attorney visiting room telephones do not work. All communications, whether by telephone to my office or at the jail, have been overheard by other inmates and by jail personnel. I have had no private communications with my client since his being jailed. In the jail attorney visiting room, I have had to yell through the glass in

order to talk with my client. These problems have prevented me from adequately preparing myself and my client for either plea or trial.

"4. Secondly, I have come to the conclusion that my client is not mentally competent to [ ] stand trial. This opinion is based upon my discussions with my client and upon statements, often meaningless, which he has made to me.

"5. My opinion regarding my client's lack of mental capacity to assist in his defense is also based upon information I have gained through consultation with a mental health counselor.

"6. My consulting counselor has indicated to me that to the extent my client is suffering from some mental incapacity, the deficient visiting facilities have exacerbated the problem by preventing me from carrying on the confidential communications necessary to alleviate the problems associated with my client's mental deficiency.

"7. My client's mental deficiency or condition has prevented the preparation for trial or plea in this case. Simply put, my client is not in the condition to assist in the preparation for trial in this case.

"8. Finally, I believe that a mental evaluation of my client is a necessary predicate to further action in this case."

The trial court denied the June 23 motion stating, "the trial has been scheduled since January 13, 1997 and defendant has been in custody since November 1, 1996."[1] The case went to trial, and defendant testified as to his versions of

---

[1] Defense counsel filed an earlier motion on June 11, 1997, to continue the trial date. Its grounds were that:

"(1) To date, defense counsel has been unable to acquire evidence relating to the psychological and neurological condition of defendant. A short time prior to the alleged crime the defendant suffered a severe head injury and initial investigation indicates that this injury may have affected the defendant's ability to form the necessary legal intent to commit the alleged crime. This evidence is vital to the preparation of a defense in this case.

"(2) Defense counsel has a scheduling conflict which prevents him from attending the trial in this case. Defense counsel is scheduled to take part in a case involving four defendants in Malheur County on the same dates as the ones for which this case's trial is scheduled.

"(3) Defense counsel and the District Attorney are involved in the negotiations which may result in a plea. This anticipated plea will eliminate the need for a trial in this case."

That motion was denied on June 16, 1997, by the trial court without explanation.

the events that led to the charges. On appeal, defendant argues:

> "Where the trial court in a criminal case has a threshold reasonable ground or bona fide cause to believe that the accused has a mental disease or defect excluding fitness to proceed, it should upon its own motion order a psychiatric examination. * * *

> "According to the record in this case, at the time of his trial, the [defendant] had been involved in a serious motorcycle accident about a year prior to trial. This fact, together with the difficulties faced by his attorney in his attempts to communicate with the Appellant, [defendant] indicated that, at a minimum, the trail [sic] court should have conducted a hearing prior to ordering that the trial continue without such a hearing."

On appeal, defendant says, "[defendant's] counsel raised his concerns with the trial court by way of a motion to continue the trial in which he asked for time to have [defendant] mentally evaluated." Defendant does not assign error in his brief to the denial of his motions for continuance even though in his notice of appeal, he indicated that he intended to raise those issues. Moreover, defendant does not point to any place in the record where he requested that the trial court order him evaluated or that a "fitness to proceed" hearing be held before trial. Thus, we understand defendant to argue that the content of his motions for continuance preserved for purposes of appeal his claim of error under ORS 161.360. The state counters by arguing that defendant's assignment of error is not preserved and, even if it is, that defendant points to no evidence other than the contents of the motions for continuance that raises a concern about his fitness to proceed at the time of trial.

ORAP 5.45(2) provides:

> "No matter assigned as error will be considered on appeal unless it was preserved in the lower court and assigned as error in the party's opening brief; provided that the appellate court may consider errors of law apparent on the face of the record."

The entitlement to a fitness to proceed hearing is governed by ORS 161.360. It provides:

"(1) If, before or during the trial in any criminal case, the court has reason to doubt the defendant's fitness to proceed by reason of incapacity, the court may order an examination in the manner provided in ORS 161.365.

"(2) A defendant may be found incapacitated if, as a result of mental disease or defect, the defendant is unable:

"(a) To understand the nature of the proceedings against the defendant; or

"(b) To assist and cooperate with the counsel of the defendant; or

"(c) To participate in the defense of the defendant."

In addition, ORS 161.365 provides, in relevant part:

"(1) Whenever the court has reason to doubt the defendant's fitness to proceed by reason of incapacity as defined in ORS 161.360, the court may call to its assistance in reaching its decision any witness and may appoint a psychiatrist or psychologist to examine the defendant and advise the court.

"(2) If the court determines the assistance of a psychiatrist or psychologist would be helpful, the court may order the defendant to be committed to a state mental hospital designated by the Mental Health and Developmental Disability Services Division for the purpose of an examination for a period not exceeding 30 days."

Also, ORS 161.370 provides, in part:

"(1) When the defendant's fitness to proceed is drawn in question, the issue shall be determined by the court. * * *

"(2) If the court determines that the defendant lacks fitness to proceed, the proceeding against the defendant shall be suspended * * * [until such time that he has the mental capacity to stand trial]."

The above facts raise the issue of whether defendant has preserved in the trial court for purposes of ORAP 5.45(2) his first assignment of error that the trial court erred in not conducting a "fitness to proceed" hearing. Defendant points to no place in the record where he made a formal request for a mental evaluation, although it is apparent that had the motion for a continuance been granted, he would have sought

an evaluation. The procedural posture of defendant's assignment of error puts us in the unusual position of considering whether to reverse the trial court under ORS 161.360 when its rulings were in regard to the motions for continuance. Beyond that issue, the predicate to the exercise of the trial court's discretion under ORS 161.360 is whether the "court has reason to doubt the defendant's fitness to proceed." In the event that the court forms such a belief, the court "may" order an examination under ORS 161.365, "may" appoint a psychiatrist or psychologist to examine defendant, and "may" order the defendant to be committed to a state mental hospital for evaluation. To agree with defendant's position that he properly preserved his assignment of error by his motions for continuances and that the trial court erred, we must conclude that the content of his motions put the trial court on sufficient notice to implicate ORS 161.630 and that the record of defendant's mental status required it to doubt defendant's fitness to proceed and to exercise its discretion by ordering an evaluation.

We turn to the record before the trial court at the time it ruled. The first hint in the record of a claim about defendant's mental status appears in the June 11 motion, or 14 days before trial. Defendant's initial motion sought a continuance on three grounds: the inability to acquire evidence relating to defendant's psychological condition *at the time of the crimes*; a scheduling conflict involving defense counsel; and the anticipation that plea negotiations would resolve the case. Nothing is said in that motion about defendant's fitness to proceed to trial on June 25. The second motion, made seven days after the denial of the first motion and two days before trial, asserts two grounds for continuance: that counsel's access to his client for trial preparation had been hindered because the jail telephones were not working and counsel's opinion that defendant lacked the mental capacity to aid and assist. The court file would have told the trial court that the offenses were alleged to have been committed on October 25, 1996, that defendant was arrested but released from custody on November 25, 1996, pending trial, and that his release was revoked on January 15, 1997. The trial date of June 25 appears to have been scheduled on January 13, 1997.

Sometimes, when determining whether there is an abuse in the exercise of discretion by a trial court, what is absent from a court record is as revealing as what is in it. The record does not disclose any efforts before June 23 to have defendant evaluated even though he had been in custody since January. Significantly, the June 11 motion does not ask to have defendant evaluated for fitness to proceed at the time of trial.[2] That motion was denied on June 16 or nine days before trial. The first time that defendant's fitness to proceed was raised was two days before trial. Defendant's motions do not explain why an evaluation was not requested earlier or why an evaluation could not have been obtained either before the first motion was made, or after the first motion was denied, but before the trial date of June 25. Also, the June 23 motion does not seek an evaluation before trial or explain why such an evaluation could not occur before June 25; its requested relief is limited to a postponement of the trial date.

■■ It is with this factual record that we turn back to ORAP 5.45(2) and the text and context of ORS 161.360. The purposes of the rule are to ensure that the parties have the opportunity to litigate an issue fully in the trial court and to permit the trial judge to consider the legal contention made on appeal or correct an error already made. *Shields v. Campbell*, 277 Or 71, 77, 559 P2d 1275 (1977). Here, it does not appear that the state ever had the opportunity to litigate defendant's fitness to proceed in light of the way that defendant raised the issue. On the other hand, the June 23 motion and its accompanying affidavit clearly claims that an evaluation of defendant's mental status "is a necessary predicate to further action in this case." Consequently, we hold that defendant preserved the issue of his fitness to proceed below by the information that was put before the court.

■ The question of whether the trial court was required under ORS 161.360 to order an evaluation on the record before it is a more difficult one. The standard imposed by the statute, whenever "the court has reason to doubt the defendant's fitness to proceed" is not a bright line test. We presume

---

[2] The indictment alleged that defendant acted "knowingly," "intentionally" and "recklessly."

that the legislature had in mind an objective standard as well as a subjective one. That test would permit a trial court to deny a request for an evaluation if it found that the evidence of lack of fitness before it was not credible. It would not permit a trial court to deny a request for an evaluation based solely on concerns grounded on defendant's custody status and the delay caused by such an evaluation. We are also mindful of the legal proposition that a proponent of a request to the court has the burden of demonstrating *prima facie* grounds for the relief requested. Here, the trial court's ruling does not inform us that it found counsel's claim to be incredible or that defendant did not make out a *prima facie* showing of lack of fitness, even though the contents and the timing of the motions are reasonably susceptible to an inference that they were tactical ploys to facilitate the plea bargaining that counsel said was ongoing before trial. Rather, the ruling focused on the fact that the trial had been scheduled and defendant had been in custody for a long time. In the absence of a finding that the trial court found counsel's claims incredible, we accord them credibility because they were made by an officer of the court and conclude that defendant made a *prima facie* showing that triggered the need for an evaluation of defendant's mental status under ORS 161.360.

■ After the June 23 motion to continue the trial date was denied, the matter went to trial as scheduled. Defendant did not raise the issue of his fitness to proceed again nor did he make any additional request for an evaluation. Defendant was present throughout the trial and testified in his own behalf. On appeal, he makes no contention that in fact he was unable to aid and assist his counsel at trial, nor does he point to any evidence that he was not able to present because of the failure of the trial court to order an evaluation of his mental status. Our review of his in-court testimony also reveals nothing that gives rise to an inference that he lacked the fitness to proceed. Initially, defendant was called as a witness in a hearing outside the presence of the jury to make an offer of proof regarding the subject of his second assignment of error. He was subjected to both direct and cross-examination, and his answers tracked appropriately with the questions

asked. When asked when he first learned of the victim's venereal disease, he said, "I'm not sure." When asked on cross-examination whether it was his information that her disease was not symptomatic in males, he replied, "I—I'm not clear on it." There is no suggestion in the record of those examinations that he lacked the ability to recall.

When he was called as a witness to testify before the jury, he was again subjected to direct and cross-examination. His testimony was responsive to the questions asked and again oriented as to time, place and subject matter. He recounted details such as when he had taken a shower on the day that the crimes were alleged to have occurred, what vehicle he had taken to the victim's residence and he related an event-by-event description of the contact he had with the victim, including their body positions, their state of clothing at various times and the statements made by each person. Essentially, the thrust of defendant's testimony was that he did not intend to harm the victim sexually.

Defendant also responded in his testimony to the testimony of other witnesses. He recalled his physician's name, the date of a medical examination that had occurred and the victim's ex-husband's name. He explained that he realized after his arrest that the condition of the pants that he had been wearing on the date of the offenses would be important evidence to corroborate his claim that his pants had become unbuttoned accidentally during the struggle with the victim and that is why he had kept them. At the conclusion of the hearing outside the presence of the jury, the trial court had instructed defendant not to testify about the victim's venereal disease, and when his counsel asked a question in front of the jury that could have led to an answer that would have violated the court's ruling, defendant said, "I don't know how to say this without being what the Judge instructed me not to say." In sum, the only evidence in the entire record about a lack of fitness arises from defense counsel's June 23 affidavit and is in direct conflict with the circumstances of defendant's court appearance two days later. "Under Oregon law, an error is harmless if there is little, if any, likelihood that the error affected the jury's verdict." *State v. Montez*, 324 Or 343, 355, 927 P2d 64 (1996). In this case, the trial court should have had defendant's mental status evaluated before trial.

However, there is little likelihood that the failure to order an evaluation under ORS 161.360 affected the jury's verdict.

The dissent takes issue with our conclusion that the failure to order an evaluation did not affect the jury's verdict with the assertion that the sole remedy under ORS 161.630 is now to require the trial court to conduct a hearing to determine defendant's competence at the time that the issue was raised. According to the dissent, such a hearing is required because "[t]here simply is no way for us to know, in advance, what evidence could be presented on that issue and, hence, there is no way that we can use this record to conclude that defendant is competent." 164 Or App at 698. As the proponent of an assignment of error seeking reversal of his convictions because the trial court did not conduct a competency hearing, he is entitled to prevail only if the record demonstrates *prejudicial* error. ORS 138.230;[3] *York v. Bailey*, 159 Or App 341, 347, 976 P2d 1181, *rev den* 329 Or 287 (1999).

Moreover, the facts in this case and our holding contrast significantly with the facts and holding in *State v. Gilmore*, 102 Or App 102, 792 P2d 1242 (1990), upon which the dissent relies. In *Gilmore*, the defendant's attorney filed a motion under ORS 161.360 accompanied by a supporting affidavit that described specific instances of the defendant's erratic behavior during the week preceding trial. The affiant concluded that the defendant was not fit to proceed and requested the appointment of a psychiatrist to examine the defendant. The trial court denied the motion because it believed the motion was "filed too late." *Gilmore*, 102 Or App at 104. We remanded, reasoning that "ORS 161.630(1) makes it clear that the motion is not untimely at any time 'before or during trial in any criminal case.' " *Id.* at 105. Here, the issue is not the timeliness of the motion. In the absence of any showing of an inability to present evidence at trial two days later because of his mental status, we are unwilling to

---

[3] ORS 138.230 provides, "[a]fter hearing the appeal, the court shall give judgment, without regard to the the decision of questions which were in the discretion of the court below or to technical errors, defects or exceptions which do not affect the substantial rights of the parties."

remand to the trial court on what is a technical error that did not affect defendant's substantive rights.[4]

■ Defendant's second assignment of error concerns the exclusion by the trial court of evidence of the victim's sexually transmitted disease under OEC 412. The applicable provisions of OEC 412 provide:

"(2) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.427, or in a prosecution for an attempt to commit such a crime, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence:

"(a) Is admitted in accordance with subsection (3)(a) and (b) of this section; and

"(b) Is evidence that:

"(A) Relates to the motive or bias of the alleged victim; or

"(B) Is necessary to rebut or explain scientific or medical evidence offered by the state; or

"(C) Is otherwise constitutionally required to be admitted.

"(3)(a) If a person accused of committing rape, sodomy or sexual abuse or attempted rape, sodomy or sexual abuse intends to offer under subsection (2) * * * evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than 15 days before the date on which the trial * * * is scheduled to begin, except that the court may allow the motion to be made at a later date * * * if the court determines either that the evidence is newly discovered * * * or that the issue to which such evidence relates has newly arisen in the case. * * *

---

[1] Defendant also makes a federal constitutional due process argument based on the failure of the trial court to order an evaluation of his mental status. Even if defendant's argument is preserved by the contents of his counsel's affidavit, we conclude beyond a reasonable doubt that the trial court's error did not contribute to the jury's decision to convict. *Chapman v. California,* 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705 (1967).

"(b) The motion described in paragraph (a) * * * shall be accompanied by a written offer of proof. * * *

"* * * * *

"(4) For purposes of this section:

"* * * * *

"(b) 'Past sexual behavior' means sexual behavior other than sexual behavior with respect to which rape, sodomy or sexual abuse or * * * [an attempt at such a crime] is alleged."

Defendant first argues that the evidence of venereal disease is "physical status evidence" and not "past sexual behavior" as contemplated by the rule; therefore, it is not subject to exclusion under OEC 412. In *State v. Wright*, 97 Or App 401, 406, 776 P2d 1294, *rev den* 308 Or 593 (1989), we defined "past sexual behavior" as "a volitional or non-volitional physical act that the victim has performed for the purpose of the sexual stimulation or gratification of either the victim or another person or an act that is sexual intercourse, deviate sexual intercourse or sexual contact, or an attempt to engage in such an act." Under that definition, evidence of sexually transmitted diseases is tantamount to evidence of past sexual behavior because sexually transmitted diseases occur as the result of sexual intercourse, sexual contact, or deviate sexual intercourse.

■ Our prior decisions are consistent with that reasoning. In *State v. Gilliland*, 136 Or App 580, 587-88, 902 P2d 616 (1995), we held that evidence of the alleged victim's inconsistent statements regarding the number of times that she had been treated for a venereal disease was within the purview of OEC 412. Defendant argues that *Gilliland* is distinguishable because the defendant's theory of relevance in that case related to the alleged victim's credibility, whereas here defendant argues that the evidence is relevant to whether he had the requisite mental state to commit the crimes charged. That is a distinction without a difference. The emphasis underlying OEC 412 is to prohibit the use of past sexual behavior to embarrass and degrade the victims of sexual offenses. *State v. Lajoie*, 316 Or 63, 69, 849 P2d 479

(1993). Evidence that a victim has a sexually transmitted disease is as much evidence of past sexual behavior as evidence of intercourse or other sexual contact.

 In the alternative, defendant argues that the exclusion of the evidence by the trial court under OEC 412 deprived him of his constitutional right to a fair trial and precluded him from presenting a full defense. We understand his argument to assume that the evidence within the purview of OEC 412 should be admissible anyway. In support of his argument, he relies on *State v. Bass*, 69 Or App 166, 683 P2d 1040 (1984).

In *Bass*, the state appealed from a pretrial order granting the defendant's motion under OEC 412 to admit evidence of past sexual conduct by the alleged victim of the crime of rape in the first degree. There, the defendant claimed that the victim falsely accused him of rape because he had threatened to interfere with her pecuniary sexual relationship with another by harassing the other person and exposing the arrangement. The state conceded at a pretrial hearing that the evidence of the existence of a pecuniary sexual relationship between the alleged victim and the other person was relevant to the issue of a possible motive to falsely accuse. The state objected only to the admission of evidence that the relationship involved activities regarding bondage and discipline. The trial court ruled that that evidence was admissible in order to enhance the credibility of defendant's theory. We reversed, holding that while the existence of the victim's pecuniary sexual relationship was relevant to the defendant's claim of false accusation, the explicit acts that they were engaged in were not. *Bass*, 69 Or App at 169.

Defendant argues:

"The two factors that distinguish *Bass* from the instant case are the fact that the pecuniary relationship was clearly evidence of sexual behavior and the fact that this was being offered as evidence of the victim's state of mind, and not the defendant's. In our case, the evidence of a sexually transmitted disease is evidence of present physical status, not of past sexual behavior, and it was being offered as evidence of the defendant's state of mind, not the victim's. Nonetheless, the same rationale adheres. The defendant must be allowed

to present a full and fair defense theory, or else he cannot receive due process under the 5th and 14th Amendments. And similarly, while he must be allowed to offer evidence in support of this theory, were he to go further by attempting to go into the intimate details of the victim's sexual behavior that led to that disease, then he would not only transgress the statutory proscription, he would also be attempting to present evidence that is no longer relevant to his defense."

The thrust of defendant's argument is that the evidence is admissible because it shows that he would not have intended to rape the victim, knowing that she had a sexually transmitted disease. Assuming without deciding that the proffered evidence was relevant for that purpose, defendant's argument fails. OEC 412(3)(a) provides, in pertinent part:

"If the person accused of committing rape, sodomy or sexual abuse or attempted rape, sodomy or sexual abuse intends to offer under subsection (2) of this section evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than 15 days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties, and on the alleged victim through the office of the prosecutor."

At no point did defendant file the written motion required by the rule. Rather, a discussion occurred during the trial between the trial court and counsel. In response to defense counsel's argument that the evidence was admissible, the prosecutor said,

"still, you've gotta comply with the rape shield law and, you know, it could be married sex, it could be sex with strangers. I mean it doesn't matter and we're prejudiced in the following ways. If he had complied with the rape shield law (inaudible) we'd have a pretrial hearing and we

would've had an opportunity to subpoena his client's medical records from doctors to see if he originally [sic] venereal warts. Then we could've requested that either he did comply with—with the procedural requirement it wouldn't be relevant because if he had the disease originally and gave it to her before the relationship started, then it wouldn't be relevant because why would he be afraid of getting it if he had been the one to transmit it."

Later, the prosecutor said,

"I believed [defense counsel] would file a motion if he wanted to pursue it."

In *Lajoie,* the Supreme Court discussed the constitutional implications of the exclusion of evidence under OEC 412. In *Lajoie*, defense counsel filed a written motion seven days before the first scheduled day of trial. The court concluded that defense counsel's failure to comply with the 15-day notice requirement or to satisfy one of the exceptions to the notice requirement in OEC 412(3)(a) required the court to exclude the evidence. *Lajoie*, 316 Or at 81. The court relied in part on the United States Supreme Court decision in *Michigan v. Lucas*, 500 US 145, 111 S Ct 1743, 1748, 114 L Ed 2d 205 (1991). The court explained:

"As the Supreme Court stated in *Lucas*, a defendant's Sixth Amendment rights are not absolute: [T]he right to present relevant testimony is not without limitation. The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." 316 Or at 79 (internal quotes omitted).

The *Lajoie* court continued,

"* * * We conclude that [OEC 412] procedural requirements *are* justified and are neither arbitrary nor disproportionate to their intended purposes. The legislature has identified a specific type of evidence—past sexual behavior of an alleged victim of a sexual crime—the disclosure of which may be particularly 'degrading and embarrassing.' To protect the alleged victim, the legislature has created an elaborate and comprehensive scheme for the admission of this type of evidence. First, the legislature has decided that reputation and opinion evidence of the alleged victim's past sexual behavior is totally inadmissible. OEC 412(1). Second, the legislature has decided that evidence of specific

instances of the alleged victim's past sexual behavior may be admitted only under very narrow circumstances. Before it can be admitted, the evidence must be carefully 'screened' by the trial court to determine whether it is relevant and whether its probative value outweighs its prejudicial effect. To allow time for this screening process, which must include time for the prosecution to respond to the defendant's motion and time for the court to conduct a hearing, the legislature has chosen to set a 15-day pre-trial notice period. As we have explained, this notice period also serves the very important purpose of giving to the alleged victim fair warning as to the scope of any inquiry into the victim's past sexual activity.

"\* \* \* \* \*

"Based on the foregoing analysis, we conclude that the process required by OEC 412 for the admission of evidence of past sexual behavior of an alleged victim of a sexual crime is neither arbitrary nor disproportionate to the purposes that it is intended to serve. The process established by OEC 412 is a reasonable condition on the defendant's exercise of the right to present evidence. This condition is justified by legitimate state interests, including especially the interests in avoiding undue trial delay and in protecting the alleged victims of sexual crimes from harassment. Moreover, the rule contains adequate mechanisms for excusing noncompliance in those situations in which the noncompliance occurs for reasons beyond the defendant's control. We therefore hold that preclusion of evidence of the complaining witness' prior sexual behavior under OEC 412 does not violate defendant's rights under the Sixth Amendment." 316 Or at 80-81.

The holding in *Lajoie* is controlling here because defendant failed to make a written motion within the applicable time period as required by the rule. The trial court did not err in excluding the evidence.

Affirmed.

**ARMSTRONG, J.,** concurring in part and dissenting in part.

I concur in the majority's analysis of Oregon's rape shield law, OEC 412, and agree with its conclusion that evidence of a victim's venereal disease should be considered evidence of past sexual behavior under that law. However, I dissent from the majority's conclusion that the trial court's

failure to exercise its discretion as to whether to hold a competency hearing was harmless error.

The majority cites no authority for its application of harmless error analysis to the trial court's failure to address the competency issue that defendant raised, and I can find none. In Oregon, the sole remedy for a court's failure to exercise discretion under ORS 161.360 is to require the court to conduct a hearing to determine the defendant's competence at the time the issue was raised. *See State v. Gilmore*, 102 Or App 102, 105, 792 P2d 1242 (1990). *See also Brady v. Calloway*, 11 Or App 30, 41, 501 P2d 72 (1972), *rev den* (1973) (construing an earlier statute). *Cf. State v. Arndt*, 1 Or App 608, 610-11, 465 P2d 486 (1970) (holding that, in a case where defendant did not raise the issue of his competence until his motion for a new trial, the trial court's failure to order a competency hearing *sua sponte* during trial was not reversible error).

Similarly, federal cases have consistently held that the remedy for a trial court's failure to order a competency hearing as required under the Fourteenth Amendment's due process clause is either to conduct a hearing to determine competence at the time of trial or to grant a new trial. *See Drope v. Missouri*, 420 US 162, 95 S Ct 896, 43 L Ed 2d 103 (1975) (ordering a new trial); *Pate v. Robinson*, 383 US 375, 86 S Ct 836, 15 L Ed 2d 815 (1966) (ordering a new trial); *Dusky v. United States*, 362 US 402, 80 S Ct 788, 4 L Ed 2d 824 (1960) (ordering a new trial); *Barnett v. Hargett*, 174 F3d 1128 (10th Cir 1999) (upholding trial court's decision to order a hearing to determine whether a retrospective competency determination would be feasible).

Moreover, by deeming the trial court's failure to exercise its discretion to be harmless error, the majority decides, in effect, that no evidence could be presented at a competency hearing that could establish that defendant was not competent to assist in his defense. Although the record contains evidence that arguably supports a finding that defendant was competent, the evidence was not presented for that purpose and it is not a substitute for evidence directed to that issue. There simply is no way for us to know, in advance, what evidence could be presented on that issue and, hence,

there is no way that we can use this record to conclude that defendant is competent.

Finally, we held in *Gilmore* that a trial court's failure to exercise its discretion under ORS 161.360(1) could not be overlooked on the ground that the defendant acted normally and appeared to be competent during trial. *Gilmore*, 102 Or App at 105. The majority wholly fails to reckon with our analysis in *Gilmore*, and it provides no explanation for its decision to take a novel approach to such an important issue. I would follow Oregon case law and order that a retrospective competency hearing be held. I therefore respectfully dissent from the majority's contrary decision.