Korey FELLS *v.* STATE of Arkansas

CR 04-1237 207 S.W.3d 498

Supreme Court of Arkansas
Opinion delivered April 21, 2005

[Rehearing denied June 2, 2005.*]

---

* HANNAH, C.J., and GLAZE and IMBER, JJ., would grant rehearing.

*J. Leon Johnson*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

BETTY C. DICKEY, Justice. Korey Fells was convicted in the Pulaski County Circuit Court of the rape of S.H. and sentenced to a term of eighteen years. On appeal, Fells argues that the trial court erred in (1) refusing to allow him to cross-examine a witness using a police case summary, (2) refusing to allow the defense to present evidence that the rape victim had tested positive for the human immunodeficiency virus (HIV), and (3) admitting the testimony of the alleged victim of an earlier rape by Fells. We affirm.

*Facts*

S.H., the rape victim, testified that on February 3, 2002, Super Bowl Sunday, she was standing in the entrance to the Shorter Gardens housing project when Fells drove up and beckoned to her. When S.H. approached his car, he rolled down his window and asked if he knew her. The two then talked for about twenty to thirty minutes. S.H. mentioned that she was hungry, and he offered to drive her to a gas station so that she could get something to eat. Fells complimented S.H. on her physical appearance, and he portrayed himself as a trustworthy friend in whom she could confide. On the way to the gas station, he asked S.H. if she wanted to drive with him so that they could watch the Super Bowl on his car's television and S.H. could finish talking about her problems. S.H. agreed. He drove several miles and parked in an area with which S.H. was unfamiliar. While they drove, S.H. told Fells that she was pregnant and had suffered complications from her pregnancy earlier that day. She also told him that there were warrants out for her arrest and that she had few friends and nowhere to go. Fells parked his car, and the two sat in the backseat so that they could watch the Super Bowl. He then began to grope S.H. When she protested, he threatened to leave her to find her own way home. S.H. testified that she then feared for her life and the life of her unborn child, and she submitted. Shortly thereafter,

police officers approached the vehicle. Fells told the police that everything was fine, but S.H. said that she had been raped. He then told the officers S.H.'s name and that she had warrants out for her arrest. S.H. left with the police, and Fells was eventually charged with rape.

Just before trial, the State moved *in limine* to prevent Fells from questioning S.H. regarding her HIV-positive status. The court granted the State's motion. Fells and S.H. testified at trial, as did R.B., the alleged victim of an earlier rape by Fells. Fells moved to exclude R.B.'s testimony on the grounds that its only purpose was to portray him as a criminal character, but the court determined that the testimony was admissible under Rule 404(b) as evidence of *modus operandi*. After R.B. testified that she had felt threatened by Fells, his attorney attempted to cross-examine her by reading a police case summary in which a detective noted that R.B. had told him that Fells had not threatened her in any way. The jury found Fells guilty of rape, and the trial court entered judgment on September 17, 2003.

The court of appeals reversed Fells's conviction, holding that Fells should have been able to present evidence that S.H. was HIV-positive and that R.B.'s testimony should have been excluded. We now affirm the trial court and reverse the court of appeals.

### Standard of Review

Upon petition to review a decision of the court of appeals, this court reviews the case as if it had originally been filed in this court. Hence, this court's review centers on the trial court's decision, not on the decision of the court of appeals. *Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d 681 (2002).

Fells disputes three of the trial court's evidentiary rulings. The admission or rejection of testimony is a matter within the trial court's sound discretion and will not be reversed on appeal absent a manifest abuse of that discretion and a showing of prejudice to the defendant. *Ellison v. State*, 354 Ark. 340, 123 S.W.3d 874 (2003).

### Cross-Examination of R.B.

At trial, the State called as a witness R.B., the alleged victim of an earlier rape by Fells, who testified that Fells had threatened her during the incident. Fells's attorney attempted to cross-examine R.B. as follows:

Q. Did you at any time tell Detective Massiet, "At no time did Mr. Fells threaten her safety," [her] meaning you, "in any way to have sex?"

A. Say that again, I'm sorry.

Q. Did you tell Detective Massiet — and I'm going to read this verbatim.

A. Uh-huh.

Q. [R.B.] said at no time did Mr. Fells threaten her safety in any way to have sex.

The State immediately objected that this line of questioning was based on inadmissible hearsay; Fells was attempting to use Detective Massiet's out-of-court statement to prove that R.B. had not been threatened by Fells. The trial court sustained the State's objection. Fells now argues that Detective Massiet's case notes should have been admitted under Ark. R. Evid. 801(d)(1) (2004), because he was using them to impeach R.B.'s credibility.

██ Rule 801(d)(1) excludes from the definition of hearsay a witness's prior inconsistent statement if the statement, when offered in a criminal proceeding, "was given under oath and subject to the penalty of perjury." The proffered statement does not fall under the hearsay exception of Rule 801(d). It is a statement made by a police detective, not R.B., nor is it a statement that was given under oath and subject to the penalty of perjury. The trial court did not err in excluding this piece of testimony.

### S.H.'s HIV Status

Fells next argues that the trial court erred in refusing to allow him to present evidence that the rape victim, S.H., was HIV-positive. He contends that this evidence was admissible because it showed that S.H. had a motive to lie about being raped. According to Fells, because it is a crime for a person to knowingly expose another to HIV, S.H. "knew that if she did not say she was raped, it would be consensual sex and she'd be charged with a crime."

Under Arkansas's rape-shield statute, Ark. Code Ann. § 16-42-101 (Repl. 1999), evidence of a victim's prior sexual conduct may be introduced at trial only after the proponent of the evidence

has first filed a written motion explaining its relevance, and after the court has held a hearing and determined that the evidence is more probative than prejudicial. Although Fells admits that he did not comply with the required procedures, he argues that the information was not subject to the rape-shield law because it did not address any prior sexual activity, merely the fact that S.H. was HIV-positive.

■■ The issue of whether a victim's HIV status falls under the purview of the rape-shield statute is one of first impression. We hold that the HIV status of a rape victim is protected under Arkansas's rape-shield statute. The statute prohibits the use of past sexual behavior to embarrass and degrade victims; its purpose is to shield rape victims from public humiliation. *Short v. State*, 349 Ark. 492; 79 S.W.3d 313 (2002). While it is possible to contract HIV through blood transfusions or other means, the public generally views it as a sexually-transmitted disease. In the minds of the jurors, evidence that S.H. was HIV-positive would be tantamount to evidence of her prior sexual behavior.

■ One should not conclude, as the dissent suggests, that a defendant can never present evidence of a rape victim's HIV status when that evidence is relevant to a defense at trial. On the contrary, the rape-shield statute specifically contemplates the admission of such evidence, *once the required procedures have been followed and the trial court has determined that the evidence is more probative than prejudicial.* Fells did not comply with the rape-shield statute's procedures: he never filed the required motion, and he never gave the trial court the opportunity to hold a hearing and determine if the probative value of the HIV evidence was outweighed by its highly prejudicial effect. Had he done so, it is possible that the trial court would have allowed the evidence to be admitted. Because HIV status is protected under the rape-shield statute, however, Fells's failure to follow the required procedures means that the evidence was properly excluded.

### Prior Bad Act

Fells's final argument is that the trial court abused its discretion in denying his motion to exclude the testimony of R.B., the alleged victim of an earlier rape by him. R.B. testified that she first met Fells when he drove up to her while she was standing in a parking lot outside a free medical clinic. He called R.B. over to his

car, ostensibly because he thought she was someone he knew, and the two then talked for about twenty to thirty minutes. Fells portrayed himself as a helpful, trustworthy friend, and he repeatedly complimented R.B. on her clothes, demeanor, and physical appearance. While they were talking, he learned that R.B. was waiting for her boyfriend to pick her up and that she was looking for a job. He offered to give her a ride and asked for her cell phone number so that he could get in touch with her about a job opening at the airport. He asked R.B. if she was hungry, and he bought her a meal. A few days later, Fells called R.B. and suggested that they meet so that he could give her a job application. Once they were together, Fells said that he had set up an interview, and he took R.B. to the house that she shared with her boyfriend so that she could change into more appropriate clothing. He followed R.B. into the bedroom where she was changing clothes, and he began to touch her and make suggestive comments. When R.B. protested, Fells threatened to tell her boyfriend that she had had sex with him and another man and to tell people that she was a prostitute. As soon as he left, R.B. called the police.

The lower court admitted R.B.'s testimony as evidence of Fells's method of operation, or *modus operandi*. The State argued at trial, and continues to argue on appeal, that the evidence was alternately admissible as evidence of Fells's intent, motive, or plan. This court can affirm a trial court's ruling if it reached the right result, even if we affirm for a different reason. *Williams v. State*, 343 Ark. 591, 36 S.W.3d 324 (2001). While R.B.'s testimony may not have been admissible as *modus operandi* evidence, it certainly could have been admitted under the Ark. R. Evid. 404(b) exception for proof of motive, intent, or plan. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The test for establishing motive, intent, or plan is whether the prior bad act has independent relevance. *Haire v. State*, 340 Ark. 11, 8 S.W.3d 468 (2000). Evidence meets this test if it proves a material point and is not introduced solely to prove that the defendant is a bad person. *Id.*

█ When offered as Rule 404(b) evidence, the prior bad act need not have the degree of similarity that is required for evidence of *modus operandi*. For example, in *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001), a burglary trial, the prosecution introduced evidence that the defendant had previously been convicted of another burglary. The *Barnes* court observed that, although there were few similarities between the two crimes, the evidence was nonetheless admissible because "in both instances, Barnes broke into the homes of elderly women in order to rob them. Thus, the evidence of his prior conviction was relevant to show that he possessed the same intent, motive, and plan — that is, to rob — as he did in the earlier case." *Id.* at 108.

█ There are enough similarities between the incidents with R.B. and S.H. to make R.B.'s testimony relevant as evidence of Fells's intent, motive, or plan. In both cases, Fells drove around low-income areas, saw women who seemed like they had nowhere else to go, and called them over to his car on the pretense that he thought they were someone else. He made small-talk with each woman for about twenty to thirty minutes, discovered that they had needs, such as a job, a meal, or someone to talk to, and then immediately offered to fulfill those needs. Fells portrayed himself as charming, friendly, helpful, trustworthy, and safe. He told each woman that he was her friend, and he paid them compliments. When pressed, however, Fells used his knowledge of their vulnerabilities to his advantage. When R.B. resisted his advances, he threatened to tell her boyfriend. In S.H.'s case, he told her that if she did not submit, he would leave her to find her own way home and, when the police arrived, he attempted to discredit her by telling the police that there were warrants out for her arrest. R.B.'s testimony was admissible under Rule 404(b) as evidence that Fells possessed the same intent, motive, or plan with S.H. as he had in the earlier incident with R.B.

Trial court affirmed; Court of Appeals reversed.

HANNAH, C.J., GLAZE, and IMBER, JJ., dissent.

JIM HANNAH, Chief Justice, dissenting. I must respectfully dissent. I disagree that a person's HIV status constitutes prohibited evidence of specific instances of a rape victim's prior sexual conduct. I also disagree that Ark. R. Evid. 404 is as broad as the majority concludes. The issue of the admissibility of S.H.'s HIV status

is relevant and should have been analyzed under Ark. R. Evid. 401 and Ark. R. Evid. 403.[1] I would reverse the circuit court, affirm the court of appeals, and remand the case for a new trial.

While I certainly share the majority's well-justified concern about protecting rape victims in criminal prosecutions, I believe that the majority is inadvertently altering the law in this case, and issuing an opinion that will require reversal in the future. We cannot ignore more than twenty-seven years of precedent developed since the rape-shield statute was passed in 1977. The policy of adhering to precedent, or the doctrine of *stare decisis*, is fundamental to the common law. *Gavin v. State*, 354 Ark. 425, 125 S.W. 3d 189 (2003). We should not ignore the intent and plain language of the rape-shield statute. Our opinions should be based on the statute and precedent rather than on what this court might imagine is the current view "overwhelmingly" held by the public. The issue of the admissibility of S.H.'s HIV status is complex. The general proposition stated in the majority opinion that the rape-shield statute "prohibits the use of past sexual behavior to embarrass and degrade victims; its purpose is to shield rape victims from public humiliation" is true as far as it goes. However, the law on the rape-shield statute is more complex than that.

The HIV status of a rape victim is not protected under Arkansas's rape-shield statute. The question presented is whether the attempt to introduce evidence that S.H. is HIV-positive is an attempt to introduce prohibited specific instances of a rape victim's prior sexual conduct. It is not.

The evidence of prior sexual conduct that is prohibited under the rape-shield statute is set out in Ark. Code Ann. § 16-42-101 (Repl. 1999). The term "sexual conduct" is defined in section 16-42-101(a) (Repl. 1999), which provides: "As used in this section, unless the context otherwise requires, 'sexual conduct' means deviate sexual activity, sexual contact, or sexual intercourse, as those terms are defined by § 5-14-101 (Supp. 2001)." Let us consider these terms in turn. Sections 5-14-101(1)(A) and (B) (Supp. 2001) define deviate sexual activity as "any act of sexual gratification involving . . . [t]he penetration, however slight, of the anus or mouth of one person by the penis of

---

[1] The majority is wrong in stating this dissent suggests that a defendant can never present evidence of a rape victim's HIV status when that evidence is relevant to a defense at trial.

another person; or . . . [t]he penetration, however slight, of the labia majora or anus of one person by any body member or foreign instrument manipulated by another person . . . ." Section 5-14-101(8) (Supp. 2001) defines sexual contact as "any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female . . ." Finally, sexual intercourse is defined as the "penetration, however slight, of the labia majora by a penis." Ark Code Ann. § 5-14-101(9) (Supp. 2001).

Being HIV-positive is not evidence of specific instances of a victim's prior sexual conduct. It is not evidence of any of the conduct set out in the rape-shield statute. To be subject to the rape-shield statute, the evidence must show specific conduct. *See* Ark. Code Ann. § 16-42-101 (Repl. 1999). Being HIV-positive does not reveal any specific instance of prior sexual conduct.

The error committed in the circuit court is being perpetuated by this court. Prior to *voir dire*, the following discussion took place between the court and counsel:

> MR. HOUT: There are some other things that would impact substantially on *voir dire* on some issues that we have and I can address them pretty quick.

> THE COURT: Okay.

> MR. HOUT: I apologize for that, but it would modify how *voir dire* is done. And one is the victim in the particular case has HIV. She had HIV before that. We anticipate the defense attorney is going to attempt to bring out the evidence that she did have HIV. The fact that she has HIV is specifically prior sexual contact. There has never been a hearing on rape-shield. The rape-shield statute says —

> THE COURT: Are you going to try to use that?

> MR. CORTINEZ: Not — Judge, we are not trying to get into her prior sexual activities.

> THE COURT: No talking about that.

> MR. CORTINEZ: Now, we are trying to show that she had AIDS at the time that this crime or alleged crime was committed.

THE COURT: No.

MR. HOUT: And the cases specifically say it can't come in for credibility.

THE COURT: No reason for that.

MR. CORTINEZ: Well, there is a reason, Judge.

THE COURT: No. I won't allow it.

MR. CORTINEZ: Can I say something?

THE COURT: Sure.

MR. CORTINEZ: This lady was in a vehicle and she knew that she had HIV positive and she knew that it was a crime for her to have sex with a person. Now, whenever she had sex with a person and the police come, in order to — in order to be sure that she's not charged with a crime, she says, "I was raped," which is non-consensual and the only way she can be charged with a crime with having AIDS is for it to be consensual.

THE COURT: No. I'm not going to allow that.

The circuit court was told: "The fact that S.H.' has HIV status is specifically sexual contact. There has never been a hearing on rape-shield. The rape shield statute says . . ." Thus, the circuit court was told that the HIV-positive evidence was specifically prior sexual contact and was subject to the hearing process required under the rape-shield statute for admission of evidence of "specific instances of the victim's prior sexual conduct." Ark. Code Ann. § 16-42-101 (Supp. 2003). On this basis, the circuit court refused admission of the evidence. Fells argued that S.H.'s HIV status was not evidence of prior sexual conduct subject to the rape-shield statute. Fells is correct. The admissibility of S.H.'s HIV status is subject to Ark. R. Evid. 401 and Ark. R. Evid. 403, as is any evidence. The issue is whether being HIV positive is relevant. The trial court must first determine whether S.H.'s HIV status is relevant. Then, if the evidence is found to be relevant, the trial court determines whether the evidence is more probative than prejudicial before the evidence is allowed.

The majority states that "The statute prohibits the use of prior sexual behavior to embarrass and degrade victims; its purpose is to shield rape victims from public humiliations." *Short v. State,*

349 Ark. 492, 79 S.W.3d 313 (2002) is cited. In *Short*, this court stated that "The purpose of the rape-shield statute is to shield victims of sexual offenses from the danger of public humiliation." *Short*, 349 Ark. at 500. This court has never used the phrasing now used by the majority. We have stated that "The purpose of the statute is to shield victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt."[2] The phrase "prior sexual behavior" has been used once by this court, and that was in *Kagebein v. State*, 254 Ark. 904, 496 S.W.2d 435 (1973), where the discussion was of "specific sexual behavior testimony...." relative to an attempt to introduce evidence that the murder victim might have been willing to purchase beer for underage persons, including the appellant, in return for sex, which in turn was to show that the appellant feared for his safety. This court held that it was error to exclude the evidence.

By substituting the phrase "prior sexual behavior" for the statutory phrase "specific instances of the victim's prior sexual conduct," the majority attempts to expand the coverage of the rape-shield statute to cover not only specific instances of sexual conduct but also anything that in any way relates to prior sexual conduct however indirect. If the legislature wishes this to be the law, then the statute must be changed. It is not up to this court to legislate. *Sebastian County Chapter of the Am. Red Cross v. Weatherford*, 311 Ark. 656, 846 S.W.2d 641 (1993). S.H.'s status of being HIV positive was not evidence of prior sexual conduct. It was not subject to the statute. Further, it is not evidence that is "unrelated to the charges pending," or "irrelevant to the defendant's guilt." *Hathcock, supra.*

On appeal, the State argues that since HIV is transmitted primarily through sexual conduct; and, therefore, it is a sexually

---

[2] *Hathcock v. State*, 357 Ark. 563, 182 S.W.3d 152 (2004); *Parish v. State*, 357 Ark. 260, 163 S.W.3d 843 (2004); *Standridge v. State*, 357 Ark. 105, 161 S.W.3d 815 (2004); *Taylor v. State*, 355 Ark. 267, 132 S.W.3d 759 (2004); *Turner v. State*, 355 Ark. 541, 142 S.W.3d 352 (2004); *Martin v. Arkansas*, 354 Ark. 289, 119 S.W.3d 504 (2003); *Overton v. State*, 353 Ark. 697, 120 S.W.3d 76 (2003); *Butler v. State*, 349 Ark. 252, 82 S.W.3d 152 (2002); *Jones v. State*, 348 Ark. 619, 74 S.W.3d 663 (2002); *State v. Babbs*, 334 Ark. 105, 971 S.W.2d 774 (1998); *Graydon v. State*, 329 Ark. 596, 953 S.W.2d 45 (1997); *Harris v. State*, 322 Ark. 167, 907 S.W.2d 729 (1995); *State v. Sheard*, 315 Ark. 710, 870 S.W.2d 212 (1994); *Gaines v. State*, 313 Ark. 561, 855 S.W.2d 956 (1993); *Flurry v. State*, 290 Ark. 417, 720 S.W.2d 699 (1989).

transmitted disease and thus evidence of prior sexual conduct. The State then cites *State v. Cunningham*, 164 Or. App. 680, 995 P. 2d 561 (Ore. 2000) (Evidence of a sexually transmitted disease is not admissible because if the disease is sexually transmitted, presence of the disease raises past sexual behavior); *Commonwealth v. Barresi*, 46 Mass. App. Ct. 907, 705 N.E. 2d 639 (1999) (Evidence that the victim had chlamydia was inadmissible because it was prior sexual history), *State v. Mitchell*, 568 N.W. 2d 493 (Iowa 1997) (Evidence that the victim had a different strain of gonorrhea than the defendant was excluded because as a sexually transmitted disease, it was evidence of past sexual behavior); and *State v. Jary*, 161 Vt. 629, 641 A. 2d 364 (1994) (Evidence that the victim had chlamydia was inadmissible because it was past sexual history). None of these cases are on point because our law requires specific instances of prior sexual conduct and because each dealt with a sexually transmitted disease. AIDS is not transmitted solely by sexual conduct. The State also cites *State v. Steele*, 510 N.W. 2d 661 (S.D. 1994), a case involving a statute similar to our own that excludes specific instances of prior sexual conduct. In *Steele*, the South Dakota Supreme Court held that the rape-shield statute was not applicable because evidence that the victim had chlamydia was not evidence of a specific instance of a victim's prior sexual conduct.

The majority states that "[w]e hold that the HIV status of a rape victim is protected under Arkansas's rape-shield statute." By declaring what the public believes with respect to how HIV is contracted, the majority is weighing the evidence contrary to the rape-shield statute. The majority now holds that one's HIV status is evidence of sexual behavior. The broad and unfounded holding of the majority will certainly create confusion and havoc in criminal cases, and one must wonder what affect this decision will have on evidence in civil suits wholly unrelated to allegations of sexual misconduct. In this present case, Fells wished to put on evidence that S.H. was HIV-positive and that she claimed he raped her to avoid prosecution for having sex with another person while HIV-positive. The majority states that "[w]hile it is possible to contract HIV through blood transfusions or other means generally views it as a sexually transmitted disease." This court therefore holds that being HIV-positive is evidence of specific instances of sexual conduct. It seems doubtful to me that this court would wish to make such an assertion, yet it unabashedly does. I wonder how those who contracted the disease through blood transfusion or accident will feel about this conclusion.

By 1983, it was known that AIDS was caused by a virus that was passed through intravenous drug use, blood transfusions, or sexual contact. *See R.F. and R.F. v. Abbott Lab.*, 162 N.J. 596, 745 A. 2d 1174 (2000). Fourteen years ago, the Ryan White Comprehensive AIDS Resources Emergency Act of 1990, 42 U.S.C. § 300ff., was enacted for several purposes, including to provide emergency assistance to localities that are disproportionately affected by the Human Immunodeficiency Virus epidemic. *See Phipps v. Comprehensive Cmty. Dev. Corp.* 152 F. Supp. 2d 443 (S.D.N.Y. 2001). It is common knowledge that Ryan White was a boy who tragically died from AIDS contracted in the course of treatment for hemophilia. I earnestly believe that society has reached the point that it is commonly understood that being HIV-positive is not an automatic indicia of sexual conduct or sexual misconduct. We certainly should not perpetuate false and unenlightened notions about this deadly disease.

In any event, there was evidence introduced at trial that S.H. had previously engaged in sexual conduct. S.H. testified at trial that she was twenty-two and had two children, one eight-year-old and one that was one year of age. She also testified that Fells asked her if she had been hurt before, and she said, "Well, put it like this, I've done been through a lot of men." The State certainly put evidence before the jury which showed she had engaged in sexual conduct in the past.

As to the defense Fells wished to present, he testified that he and S.H. agreed to money for sex. S.H. testified that she got in his truck and agreed to go watch the Super Bowl game with him. She testified that when he turned down a dirt road, she objected, so he turned around and parked in a newer neighborhood of "nice homes and a golf course." At trial, S.H. testified that Fells grabbed her and removed her pants, and that when she said "no," he asked her, "do you want to make it home?" This implies that she could submit or die. However, she told police that she removed her own pants because Fells suggested that if she did not "put out," she could walk home. There is obviously a significant difference in the two accounts. This testimony in connection with a defense that S.H. was lying to protect herself against a charge for exposing a person to AIDS, or perhaps a charge for prostitution, might well have resulted in a different outcome. Fells wished to develop a defense at trial that was to show S.H. accused him of rape to assure that she would not be prosecuted for exposing a person to AIDS, a Class A felony under Ark. Code Ann. § 5-14-123 (1997).

Whether he had facts sufficient to develop such a defense we do not know because the circuit court refused to allow the matter to proceed.

The statute was enacted to avoid a prior improper practice:

> The courts have historically permitted a defendant's attorney to cross-examine in detail a victim as to her complete sexual history. This information is usually totally irrelevant to the charge of rape. Act 197 was obviously designed to limit this type of examination and protect the victim from unnecessary humiliation.

*Duncan v. State*, 263 Ark. 242, 244, 565 S.W. 2d 1 (1978).

What the rape-shield statute protects against is admission of specific instances of sexual conduct unrelated to the issue of the defendant's guilt. *Hathcock, supra.* In the present case, the evidence of being HIV-positive was not evidence of specific instances of sexual conduct and was not subject to the rape-shield statute under these facts. The decision of the court of appeals was correct.

I also believe that this decision so alters the law as to run afoul of the federal constitution. Either we will see the error of our ways and reverse this case, or it will likely be reversed by the federal district court in a *habeas corpus* proceeding. Fells has a federal constitutional right to present evidence, particularly to present evidence of a defense. "The Constitution guarantees criminal defendants a meaningful opportunity to present a complete de-fense." *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993). Certainly, we have broad latitude under the federal constitution to establish rules excluding evidence from criminal trials, and such rules "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are de-signed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998). The problem in the case before us is that the majority excludes evidence that is relevant to a defense that Fells wishes to prove and evidence that is not even evidence of specific instances of sexual conduct as prohibited under the statute. Therefore, the exclusion is arbitrary and may well violate Fells's federal due process rights.

I also dissent on the issue of the admission of character evidence and Ark. R. Crim. P. 404(b). Again, the majority makes a decision on a complex issue by resorting to one case for a very general proposition and then simply states an unsupported conclu-sion. The case of *Haire v. State*, 340 Ark. 11, 8 S.W. 3d 468 (2000),

is cited only to show that "[t]he test for establishing motive, intent, or plan is whether the prior bad act has independent relevance."

Character evidence is independently relevant when it tends to prove a material point rather than merely trying to prove the defendant is a criminal. *Henry v. State*, 309 Ark. 1, 828 S.W. 2d 346 (1992). The majority asserts that the evidence regarding the other alleged victim is relevant to show "motive, intent or plan," which has become the catchall phrase used to allow most any evidence of character to overcome Rule 404(b). S.H. alleged that Fells engaged in forcible sexual intercourse. Sexual intercourse is defined as "penetration, however, slight, of the labia majora by a penis." Ark. Code Ann. § 5-14-101(9). Forcible compulsion is defined as "physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person." Ark. Code Ann. § 5-14-101(2)(Supp. 2001). Fells was charged and convicted of rape by forcible compulsion under Ark. Code Ann. § 5-14-103(A)(a)(1) (Supp. 2001).

The State in its opening statement asserted that the facts would show that Fells was on the prowl for a vulnerable woman. In its closing argument, after having gotten in the testimony of the alleged previous victim, the State argued that Fells was a predator and that he found vulnerable women and took what he wanted. From the majority opinion, one must conclude that the "motive, intent or plan," referred to by the majority, is that Fells was a sexual predator and the evidence of the earlier alleged victim showed his motive as a predator, intent, or plan. The problem is that the crime Fells was charged with was rape, not being a sexual predator. What is at issue is the rape, not Fells's motive in picking S.H. up as a sexual predator. Evidence showing why Fells was out in his SUV talking to women in parking lots is clearly relevant to show a motive. Likewise, evidence of the events with R.B. also is relevant to show this character trait. However, Rule 404 makes evidence of character traits inadmissible. Fells was charged with a single offense of rape by forcible compulsion.

Rape is not a continuing offense; it is a separate crime for each occurrence. *Smith v. State*, 354 Ark. 226, 118 S.W. 3d 542 (2003); *Rains v. State*, 329 Ark. 607, 612, 953 S.W.2d 48 (1997); *Tarry v. State*, 289 Ark. 193, 710 S.W. 2d 202 (1986). Other incidents that are totally unrelated to the charge in question are "clearly inadmissible." *Rowdean v. State*, 280 Ark. 146, 147, 655 S.W. 2d 413 (1983), *Alford v. State*, 223 Ark. 330, 266 S.W. 2d 804 (1954). If the testimony is not relevant to prove intent to commit

the crime charged, then the testimony is inadmissible. *Hawksley v. State*, 276 Ark. 504, 637 S.W. 2d 573 (1982).

*Alford, supra,* was recently cited in *Hanlin v. State*, 356 Ark. 516, 157 S.W.3d 181 (2004). It has been cited numerous times since adoption of Rule 404. In *Evans v. State*, 287 Ark. 136, 140, 697 S.W. 2d 879 (1985), *rev'd on other grounds by Walker v. State*, 304 Ark. 393, 805 S.W. 2d 502 (1991), this court stated: "In *Alford v. State*, 223 Ark. 330, 266 S.W. 2d 804 (1954), we thoroughly discussed the purposes and application of the common law equivalent of Rule 404." The court of appeals stated that "Rule 404(b) is virtually a codification of *Alford* and the cases following it." *Tharp v. State*, 20 Ark. App. 93, 724 S.W. 2d 191 (1987). This court in *Alford* stated the now familiar rule that evidence of other crimes is "never admitted when its only relevancy is to show that the prisoner is a man of bad character, addicted to crime." *Alford*, 223 Ark. at 333. The *Alford* court also stated the familiar rule that where the evidence is "independently relevant to prove some material point rather than merely to prove that the defendant is a criminal — then the evidence is admissible, with a proper cautionary instruction by the court." *Alford*, 223 Ark. at 334. We recently restated the rule as follows: "Another crime is 'independently relevant' if it tends to prove a material point and is not introduced merely to demonstrate that the defendant is a criminal." *Henderson v. State*, 360 Ark. 356, 201 S.W.3d 401 (2005).

In *Alford*, the circuit court allowed the State to put on the testimony of a lady who had suffered an attempted rape by Alford under circumstances very similar to those under which Alford was charged. As in the case before us, the State contended that "proof of a recent offense of a similar nature is competent." *Alford*, 223 Ark. at 333. Just like the circuit court in this case, the circuit court in *Alford* allowed the evidence based on intent or design. *Id*. The similarity to the facts in the present case is striking. In *Alford*, this court stated:

> Thus our cases very plainly support the commonsense conclusion that proof of other offenses is competent when it actually sheds light on the defendant's intent; otherwise it must be excluded. In the case at bar it seems to us idle to contend that there was any real question about Alford's intent, concerning which the jury needed further enlightenment. See Wigmore, § 357. If Alford overpowered his victim and ravished her, it is a quibble to contend that perhaps he intended something other than rape. The jury's problem was to determine whether the acts described by the prosecutrix

took place; if so, their motivation is not open to doubt. The earlier attack upon Mrs. Austin could have no conceivable pertinence except to brand Alford as a criminal, which is just what the State is not allowed to do. *Williams v. State*, 183 Ark. 870, 39 S.W.2d 295. Nor could this deadly prejudice be removed by the instruction confining Mrs. Austin's testimony to the issue of intent. If her evidence had no permissible relevancy to that issue, and we think it had none, then the jury could obey the instruction only by disregarding the evidence altogether — a result that is more surely accomplished by excluding the testimony in the first place. It is not without regret that we send this cause back for a new trial. But the issue goes to the very heart of fairness and justice in criminal trials; we cannot conscientiously sustain a verdict that may have been influenced by such prejudicial testimony.

*Alford*, 223 Ark. at 338-39. Almost thirty years later in *Hawksley, supra*, this court similarly stated:

Two of the charges in the present case were battery in the first degree and aggravated assault. The testimony concerning prior crimes was not relevant to prove intent to commit the crimes charged. For a complete discussion of cases involving evidence admissible to prove intent see *Alford v. State*, 223 Ark. 330, 266 S.W.2d 804 (1954); and *Moore v. State*, 227 Ark. 544, 299 S.W.2d 838 (1957). Here, the evidence of other crimes was not admissible and was prejudicial to the appellant.

*Hawksley*, 276 Ark. at 508. We correctly stated that in *Alford* "we put an end to a developing practice of saying loosely that proof of recent, similar crimes is admissible to show intent." *Johnson v. State*, 288 Ark. 101, 104, 702 S.W. 2d 2 (1986). We have wandered far afield from the well-considered principles developed in our case law regarding admission of other crimes and bad acts, and we have allowed ourselves to become confused by resorting to simple catchall phrases that have been inserted in opinions, in lieu of analysis. We have fallen into the error of defaulting to intent, concluding that whatever character evidence is presented went to intent. Where as in this case, the evidence of recent similar acts has no true relation to the intent required for the crime charged, it is prejudicial error to admit it. *Alford, supra*. More is required of this court than defaulting to the worn and tired phrase: the evidence goes to "motive, intent or plan." The exception has swallowed the rule.

I have other concerns regarding the application of Rule 404; however, rather than restate them in detail here, I refer to my concurrence in *McCoy v. State*, 354 Ark. 322, 123 S.W. 3d 901 (2003). For the forgoing reasons, I dissent.

GLAZE, J., joins.

IMBER, J., joins in part.

A NNABELLE CLINTON IMBER, Justice, dissenting. I join the dissent in concluding that S.H.'s HIV status was not evidence of any specific instance of prior sexual conduct subject to Arkansas's rape-shield statute, Ark. Code Ann. § 16-42-101 (Repl. 1999).