Cite as 2020 Ark. 56

# SUPREME COURT OF ARKANSAS

**No.** CR-19-514

| | |
|---|---|
| ANTHONY C. FOWLKES | **Opinion Delivered:** February 6, 2020 |
| APPELLANT | |
| | APPEAL FROM THE FAULKNER |
| V. | COUNTY CIRCUIT COURT |
| | [NO. 23CR-17-1257] |
| STATE OF ARKANSAS | |
| | HONORABLE CHARLES E. |
| APPELLEE | CLAWSON, JR., JUDGE |
| | |
| | AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

Anthony Fowlkes appeals his conviction for rape, third-degree domestic battery, kidnapping, second-degree terroristic threatening, and first-degree interference with emergency communications. He argues that the circuit court erred in allowing a witness to testify that she had also been raped by Fowlkes and in prohibiting him from cross-examining that witness with text messages and photographs from the time of her alleged rape. We affirm.

## I. *Background*

Anthony Fowlkes and the victim, Branson, were involved in a brief consensual sexual relationship during which Fowlkes was physically abusive and controlling. In June 2017, Fowlkes and Branson walked from Fowlkes's father's house to a mattress in some nearby woods. There, Fowlkes injected himself and Branson with methamphetamine. Fowlkes then ordered Branson to have sex with him. Branson testified that he forced her to "get on top

of him and make sure that his dick was hard." When she resisted, he started beating her. Branson succumbed. Fowlkes continued to strike Branson with his fists and to bite her while forcing her to have sex with him.

After dark, Fowlkes ordered Branson to walk with him to a nearby baseball field. There, Branson briefly escaped and hid near some bleachers. However, Fowlkes found her and forced her into a bathroom where he raped her anally and continued beating her. From there, the two walked to a barn where they stayed until daylight when Branson convinced Fowlkes to return to the house so they could get some food and water.

The following day, Fowlkes allowed Branson to call a friend, Patricia Brannen, who had been looking for her. When Fowlkes stepped outside, Branson told Brannen that she needed help because Fowlkes was going to kill her. Brannen called the police, who arrived at the house and asked to speak to Branson. The police officer testified that at the scene Branson appeared scared and had two black eyes, multiple bruises, and cuts on her nose and between her eyebrows. When separated from Fowlkes, Branson quietly told the police officers to arrest her because she needed to get out of the house. The officers pretended to arrest Branson and told Fowlkes that they had to take her because there was a warrant out for her arrest. At the police department, Branson reported the physical abuse and rape. While she was there, Fowlkes called the police station multiple times asking about the warrant. He also called Brannen and told her that she got "my Beth" arrested.

At trial, another woman, Ruth, testified that she, too, had been raped by Fowlkes. Ruth stated that she had a consensual sexual relationship with Fowlkes, and during that time he was controlling and abusive. She described how on one occasion Fowlkes injected her

with an unknown substance and raped her in the bedroom while punching her in the stomach and back. Ruth testified that "he made me get on top of him and he was . . . saying, you better not let it go down, you better not let it go down." After raping her, Fowlkes forced her to walk through the woods and to use sex toys on herself while he took photographs. The following morning, Ruth escaped Fowlkes by getting into the car of another woman Fowlkes was meeting. Ruth told the woman that Fowlkes had battered her and that they needed to get away. Although Fowlkes pursued them, the women were able to escape.

The State charged Fowlkes with rape, kidnapping, third-degree domestic battery, introduction of a controlled substance into the body of another, two counts of second-degree terroristic threatening, violation of a no-contact order, and first-degree interference with emergency communications. One count of second-degree terroristic threatening was nolle prossed and the violation of a no-contact order was severed. The jury acquitted Fowlkes of introduction of a controlled substance into the body of another, but it convicted him of the remaining charges. Fowlkes was sentenced to life for rape, life for kidnapping, six years for third-degree domestic battery, one year for second-degree terroristic threatening, and one year for first-degree interference with emergency communications—with the rape, kidnapping, and third-degree domestic battery sentences to run consecutively.

II.  *Analysis*

A.  Evidence of Other Crimes, Wrongs, or Acts

On appeal, Fowlkes argues that the circuit court erroneously allowed the State to introduce evidence of Fowlkes's rape and battery of Ruth. Fowlkes argues that the State introduced Ruth's testimony solely for the purpose of proving that he was a bad person. He additionally argues that since identity is not an issue, the evidence has no relevancy. We hold that the circuit court did not abuse its discretion and affirm.

Arkansas Rule of Evidence 404(b) allows evidence of other crimes, wrongs, or acts to be admitted for the purpose of showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence meets this test if it proves a material point but is not introduced solely to prove that the defendant is a bad person. *Fells v. State*, 362 Ark. 77, 84, 207 S.W.3d 498, 503 (2005). "The test for establishing motive, intent, or plan is whether the prior bad act has independent relevance." *Id.* Evidence is independently relevant if it has a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Morris v. State*, 367 Ark. 406, 412, 240 S.W.3d 593, 597 (2006). Any circumstance that ties a defendant to the crime or raises a possible motive for the crime is independently relevant and admissible as evidence. *Id.*

While evidence of other crimes or bad acts may be admissible under Rule 404(b), to be probative under Rule 403, the prior crime or bad act must be similar to the crime charged. *Davis v. State*, 362 Ark. 34, 46, 207 S.W.3d 474, 483 (2005). When offered as Rule 404(b) evidence, the prior bad act need not have the degree of similarity that is

required for evidence of modus operandi. *See Sasser v. State*, 321 Ark. 438, 447, 902 S.W.2d 773, 778–79 (1995); *Osburn v. State*, 2009 Ark. 390, at 41, 326 S.W.3d 771, 794. The prior bad act does not have to be identical, just similar. *See id.*

Additionally, trial courts have broad discretion in deciding evidentiary issues, including the admissibility of evidence under Rule 404(b), and those decisions will not be reversed absent an abuse of discretion. *Barnes v. State*, 346 Ark. 91, 105, 55 S.W.3d 271, 281 (2001). "The degree of similarity between the circumstances of prior crimes and the present crime required for admission of evidence under Rule 404(b) is a determination that affords considerable leeway to the trial judge, and may vary with the purpose for which the evidence is admitted." *Sasser*, 321 Ark. at 447, 902 S.W.2d at 778.

Here, the rapes and batteries described by Branson and Ruth were sufficiently similar to make Ruth's testimony relevant evidence of Fowlkes's intent, motive, or plan. Both women's testimony shows Fowlkes's intent to control the women by removing their ability to communicate with others and to physically abuse them in order to forcibly obtain sexual gratification while they were under the influence of an injectable substance. Both women testified that Fowlkes was physically and emotionally abusive during their relationships and that he took their cell phones leading up to the rapes so that they could not communicate freely with their friends and family. Just prior to the rapes, he injected himself and them with drugs. He then repeatedly hit them while forcing both of them to have sex with him in the specific manner that he dictated. He would continue to beat them with his fists during the rapes, even as they were compliant. Finally, either during or after the rapes, Fowlkes forced the women to spend an extended period of time in the woods.

5

Although Fowlkes's identity was not at issue, that does not mean the only purpose for the evidence was to demonstrate he was a bad person. His defense primarily rested on the argument that the episode did not occur. Given the likenesses between his relationship with these two victims and the events, we conclude that the trial court did not abuse its discretion in admitting Ruth's testimony as independently relevant evidence proving Fowlkes's intent, motive, or plan was more probable than without the introduction of her testimony.

## B. Text Messages and Photographs

Fowlkes next argues that the trial court's exclusion of sexually explicit text messages and photographs of Ruth, which were located on her phone, violated the Confrontation Clause of the United States and Arkansas Constitutions as well as Arkansas Rule of Evidence 611(b). Fowlkes's argument is not preserved for appellate review.

At the circuit court, Fowlkes filed a motion to exclude the evidence he now claims he should have been permitted to introduce on cross-examination. The circuit court granted his motion in limine and ruled that the texts and photographs were inadmissible. So initially, the exclusion of the evidence was at his request. However, part of Fowlkes's Rule 404(b) argument was that if Ruth testified, he wanted to cross-examine her with the photographs and text messages. Once the court permitted Ruth to testify, Fowlkes never argued that this evidence was admissible under the grounds he argues now. He did not argue to the circuit court that the court's exclusion of the texts and photographs from Ruth's cross-examination violated the Confrontation Clauses or Rule 611(b). He simply argued for their general admissibility, which would require the trial court to conduct a Rule 403 analysis, absent a

more specific objection. Fowlkes does not raise any other legal challenges regarding the denial of this exclusion. Therefore, these arguments are not preserved, and we will not consider them on appeal. *See Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003) (holding that an appellant must raise and present arguments, even constitutional ones, at trial in order to preserve them on appeal). Consequently, we affirm.

III. *Rule 4-3(i)*

In compliance with Arkansas Supreme Court Rule 4–3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to the appellant. No prejudicial error has been found.

HART and WYNNE, JJ., dissent.

**ROBIN F. WYNNE, Justice, dissenting.** The majority affirms a violation of the text of Arkansas Rule of Evidence 404(b), and therefore I must respectfully dissent.

The general rule is that evidence of other crimes by the accused, not charged in the indictment or information and not a part of the same transaction, is not admissible at the trial of the accused. *Anderson v. State*, 357 Ark. 180, 197, 163 S.W.3d 333, 342 (2004). Rule 404(b) of the Arkansas Rules of Evidence provides:

> *(b) Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the trial court, and this court will not reverse absent a showing of manifest abuse of that discretion. *Anderson, supra*.

7

For evidence to be admissible under Rule 404(b), it must have independent relevance. *Morris v. State*, 367 Ark. 406, 412, 240 S.W.3d 593, 597 (2006). Evidence admitted under Rule 404(b) is independently relevant if it has a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Id.* Here, the majority concludes that the trial court did not abuse its discretion in admitting Ruth's testimony regarding a prior, uncharged rape and battery during Fowlkes's trial for the rape and battery of Branson. The majority reasons that the similarities between the two criminal episodes meant Ruth's testimony was "independently relevant evidence proving Fowlkes's intent, motive, or plan was more probable than without the introduction of her testimony." But the fact that there are similarities between the victims and the events does not establish independent relevance going to any material fact in dispute in the case. An early case reversing a rape conviction is almost exactly on point:

> [O]ur cases very plainly support the common-sense conclusion that proof of other offenses is competent when it actually sheds light on the defendant's intent; otherwise it must be excluded. In the case at bar it seems to us idle to contend that there was any real question about Alford's intent, concerning which the jury needed further enlightenment. *See* Wigmore [on Evidence], § 357 (3d ed.). If Alford overpowered his victim and ravished her, it is a quibble to contend that perhaps he intended something other than rape. The jury's problem was to determine whether the acts described by the prosecutrix took place; if so, their motivation is not open to doubt. The earlier attack upon Mrs. Austin could have no conceivable pertinence except to brand Alford as a criminal, which is just what the State is not allowed to do.

*Alford v. State*, 223 Ark. 330, 338, 266 S.W.2d 804, 808–09 (1954) (decided prior to the adoption of the Arkansas Rules of Evidence). Similarly, in the present case the issue of intent (or plan or motive) was not truly at issue. Appellant's defense at trial was one of general

8

denial—i.e., the events described by Branson never occurred. There is no independent relevance to Ruth's testimony because it served only to show that because Fowlkes had done something similar in the past, he was more likely to be guilty of the crime charged.

I acknowledge that this court's precedent has strayed from the requirements of Rule 404(b). *E.g.*, *Fells v. State*, 362 Ark. 77, 207 S.W.3d 498 (2005) (affirming admission of testimony under Rule 404(b) based on similarities between the crime charged and the alleged prior rape as evidence of Fells's intent, motive, or plan). However, a majority of this court has seen fit to overrule precedent in other cases to correct perceived errors. For instance, in *Moore v. Moore*, 2016 Ark. 105, 486 S.W.3d 766, this court overruled nearly thirty years of precedent regarding a circuit court's ability to divide, as marital property, the increase in value of a nonmarital asset (the husband's business) during the marriage. This court wrote, "The legal analysis behind *Layman* [*v. Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987)] and its progeny, regarding the judicially created "active appreciation doctrine" contains a palpable error, and it is patently wrong to the extent we now must overrule it in order to return to the statute's plain language." *Moore*, 2016 Ark. 105, at 9, 486 S.W.3d at 772. *See also In re Guardianship of W.L.*, 2015 Ark. 289, at 9, 467 S.W.3d 129, 134 ("[O]ur judicially created, two-step tests are ineffective to protect a fit parent's fundamental rights and are divorced from the statutory text. The best path is to abandon the tests and bring termination-of-guardianship cases in line with the statute.").

In sum, under the facts of this case, the evidence of a prior bad act was exactly the type of propensity evidence that Rule 404(b) was designed to exclude. Its relevance was to show that it was more likely that Fowlkes had committed the charged crime; it served only

to show the jury that Fowlkes is a bad person who acted in conformity with his bad character in the present case. There was no independent relevance offered by the State or described by the majority. Finally, even if Ruth's testimony had been admissible under Rule 404(b), its probative value was substantially outweighed by the danger of unfair prejudice. *See* Ark. R. Evid. 403.

Because I would follow the plain language of Rule 404(b), I dissent.

HART, J., joins.

*William D. Shelton, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.