Cite as 2024 Ark. App. 552

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-23-791

|  |  |
|---|---|
| | **Opinion Delivered** November 6, 2024 |
| LORENZO LAMONT ALLEN<br>APPELLANT | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT<br>[NO. 18CR-23-108] |
| V. | |
| | HONORABLE RANDY F. PHILHOURS, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED; REMANDED TO CORRECT SENTENCING ORDER |

**KENNETH S. HIXSON, Judge**

Appellant Lorenzo Lamont Allen appeals after he was convicted by a Crittenden County Circuit Court jury of first-degree murder with a firearm employed during the commission of the offense, terroristic act, and six counts of aggravated assault. He was sentenced to serve an aggregate of 780 months' incarceration. On appeal, appellant contends that (1) the circuit court erred when it denied his motion for directed verdict; and (2) the circuit court erred in allowing testimony in violation of Arkansas Rules of Evidence 404(b) and 403. We affirm appellant's convictions but remand for the limited purpose of correcting the sentencing order.

I. *Relevant Facts*

Late in the evening on October 29, 2022, appellant went to Donna Christley's home to insist that he be allowed to speak with Donna's daughter, Tiara Christley. Appellant shot

and killed Donna underneath the carport of her home and fired a second shot into Donna's home with Donna's two adult daughters and four minor grandchildren inside. Appellant was arrested and charged by amended criminal information with first-degree murder in violation of Arkansas Code Annotated section 5-10-102 (Supp. 2023), a Class Y felony; terroristic act in violation of Arkansas Code Annotated section 5-13-310 (Repl. 2013), a Class B felony; and six counts of aggravated assault in violation of Arkansas Code Annotated section 5-13-204 (Supp. 2023), a Class D felony. The State alleged that appellant's sentence should be enhanced pursuant to Arkansas Code Annotated section 16-90-120 (Supp. 2023) for having employed a firearm as a means of committing the felony offense and pursuant to Arkansas Code Annotated section 5-4-702 (Supp. 2023) for having committed a felony involving homicide in the presence of a child.

Prior to trial, on July 24, 2023, the State filed a motion in limine to admit evidence of appellant's prior bad acts against Tiara Christley that occurred on August 2, 2022, and September 27, 2022. The State argued that the evidence showed that appellant had "a history of carrying a firearm and firing at the victim's family" and was therefore "relevant to the issue of [appellant's] mental state at the time of the shooting and also [to] indicate plan, motive, opportunity and absence of mistake or accident" under Arkansas Rule of Evidence 404(b). Appellant opposed the State's motion, arguing that evidence of the events that occurred on August 2, 2022, and September 27, 2022, were not independently relevant because the prior incidents "involve[ed] a third party and not the actual victim in this matter," and even if the evidence were relevant, its probative value was substantially

outweighed by the danger of unfair prejudice. After a pretrial conference, the circuit court ruled that it would take the matter under advisement and rule on it when the issue arose during trial.

A jury trial was held on August 22–23, 2023, and the following evidence was presented. Tiara testified that she and appellant met on a dating website in May 2022. They dated until she broke up with him two or three months later. On October 29, 2022, following her older sister's funeral, and after working for Door Dash, Tiara went to her mother's home, where her twelve-year-old child was staying. Also at the home that evening was Donna Christley, Tiara's mother; Kiara Christley, Tiara's twin sister; and Kiara's three minor children, ages ten, seven, and four.

Tiara testified that appellant started "calling and calling" late that evening. She answered to tell him that she was unavailable and would call him back. At that time, Tiara was in the living room with the children preparing them for bed, and Donna and Kiara were in the bedrooms. Appellant called a few more times, and Tiara eventually answered, but she refused appellant's repeated demands that she "come outside." Tiara testified that at that point, the carport door "swung open" as she and the children were attempting to sleep in the living room of the house. Appellant walked into the house, took hold of Tiara's arms, and pulled her toward the door. Tiara testified that he "was tugging pretty hard," causing her to fall into a table. The noise from the struggle between appellant and Tiara ultimately caused Kiara and Donna to come out of their bedrooms, and the four of them walked into the kitchen, where appellant was "steadily telling [Donna] that he wants to talk to [Tiara]."

3

Donna responded that Tiara did not want to talk to him, and then she took appellant outside to talk.

Tiara and Kiara later followed them outside. Tiara said that she had planned to "get in [her] car and leave" because "[appellant] came there for [her] and [her] mom was trying . . . [to] talk him down and tell him that he was to go, and he [was] still there." Appellant, however, prevented Tiara from driving away by holding her car door open. After Tiara and Kiara went back into the house, they watched and listened to the conversation between appellant and Donna on a monitor showing live views from the surveillance cameras "set up around the house," including the carport. According to Tiara, the monitor was located next to the door leading to the carport, and they could see and hear "everything . . . going on."

Tiara described the conversation between Donna and appellant as initially "calm," but frustrations became high when Donna stood in front of the carport door and told appellant he could not go back into the house. According to Tiara, her mother "was getting frustrated," and appellant "was already frustrated trying to get a point across, and [her] mom kept telling him to leave[.]" Then, as Donna continued to stand at the carport door with appellant, Tiara saw appellant pull a "black handgun with [an] extended clip" from the waistband of his pants and fire two shots "right behind one another." The first shot was fired in Donna's direction, causing her to fall. The second shot went in "the window under the carport [to the living room] where the kids sleep."

Tiara testified that she and her sister then braced themselves against the carport door as appellant attempted to kick his way inside. When he failed to gain entry through the

4

carport door, appellant went to the back deck door and started trying to kick that in. Tiara stated that she, her sister, and their children ran to the back of the house and hid in bedrooms until the police arrived.

State's exhibit 32, video-surveillance footage from the house next door, was played for the jury as Tiara testified. The neighbor's camera was directed toward Donna's carport. Although it did not clearly show appellant shoot Donna since they had moved further underneath the carport by that point, it depicted several of the other events that Tiara described in her testimony, including appellant holding Tiara's car door open and preventing her from leaving. Tiara identified appellant as the man in the video that was played for the jury, and she told the jury that she could identify appellant "because [she] dated him" and knew "exactly what he looked like."

Over appellant's objection, Tiara further testified about the two previous incidents involving appellant that occurred on August 2, 2022, and September 27, 2022. Appellant and the State repeated their same arguments about the issue as they did at the pretrial conference, and the circuit court overruled appellant's objection. Tiara testified that on August 2, 2022, after she broke up with appellant, appellant unexpectedly appeared at her house. She said that she immediately "called the [police] and told them that [her] ex-boyfriend was trying to break into [her] house, and that he had a gun." Tiara testified that appellant appeared again at her house on September 27, 2022. This time, he broke her back window and entered her house. Tiara testified that appellant was armed with a black gun "with an extended clip" and refused her numerous requests to leave. Tiara testified that she

5

was able to finally leave when she took her children to school. When she was driving back and stopped at a stop sign, she saw appellant pull out his gun and shoot at her. She "pulled off," and none of appellant's shots ended up hitting her or her vehicle.

Detective Chad Davis, the lead detective from the West Memphis Police Department, testified that when he first arrived, he saw Donna on her back underneath the carport. There was blood on her head and on the ground next to her head. Detective Davis explained that he found two 9mm shell casings next to Donna's body. He also found bullet fragments located behind the couch inside the house. Detective Davis was subsequently able to review and download the surveillance video from the residence next door that had been played for the jury.

Detective Nicholas Anderson, also a detective with the West Memphis Police Department, testified that he interviewed Tiara and Kiara. He confirmed that Tiara and Kiara both identified appellant as the individual who had shot Donna after the photographic lineups.

Dr. Jennifer Forsyth, a forensic pathologist and the medical examiner who examined Donna's body, confirmed that she was killed by a single gunshot wound to her head and that the manner of death was homicide. She opined that Donna was shot from within one to three feet away.

Steve Hargis, employed as an expert in firearms and toolmarks by the Arkansas State Crime Laboratory, testified that he examined a copper jacket from a bullet, a lead core from a bullet, a damaged copper jacket fragment from a bullet, a damaged lead core fragment, and

6

two expended cartridge cases. Hargis testified that the lead core and the lead core fragment were of no value for microscopic comparison examination. However, he determined that the damaged jacket from the victim, the damaged copper jacket fragment, and the two expended cartridge cases were all fired from the same firearm.

After the State rested, appellant moved for a directed verdict on all counts. Relevant to the issues on appeal, appellant argued that the State failed to prove that appellant's actions were purposeful as required to commit the offenses of first-degree murder, terroristic act, and aggravated assault. The circuit court denied the motion, and appellant then rested without introducing any further evidence. Appellant renewed his motion for directed verdict, which the circuit court also denied.

The jury found appellant guilty of first-degree murder, terroristic act, and six counts of aggravated assault; the jury also found that appellant had employed a firearm during the commission of the offense. He was sentenced to serve an aggregate of 780 months' incarceration. This appeal followed.

II. *Sufficiency of the Evidence*

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one

7

way or the other without resorting to speculation or conjecture. *Id.* Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Collins v. State*, 2021 Ark. 35, 617 S.W.3d 701. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* Further, the credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Armstrong, supra*.

This court has noted that a criminal defendant's intent or state of mind is seldom apparent. *Benton v. State*, 2020 Ark. App. 223, 599 S.W.3d 353. One's intent or purpose, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence but may be inferred from the facts and circumstances. *Id.* Because intent cannot be proved by direct evidence, the fact-finder is allowed to draw on common knowledge and experience to infer it from the circumstances. *Id.* Because of the difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.*

In relevant part, a person commits the crime of first-degree murder if "[w]ith a purpose of causing the death of another person, the person causes the death of another person[.]" Ark. Code Ann. § 5-10-103(a)(2) (Repl. 2013). "A person commits a terroristic act if, while not in the commission of a lawful act, the person . . . [s]hoots at an occupiable structure with the purpose to cause injury to a person or damage to property." Ark. Code Ann. § 5-13-310(a). "A person acts purposely with respect to his or her conduct or a result of his or her

conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result[.]" Ark. Code Ann. § 5-2-202(1) (Repl. 2013).

On appeal, appellant challenges the sufficiency of the evidence supporting his convictions for first-degree murder and terroristic act. He argues as he did below that he lacked the purposeful intent to harm anyone and states that Tiara even testified at trial that he said that he was on the property because he wanted to talk to her. However, appellant's argument ignores the other testimony presented from which the jury could infer his intent. Tiara testified that she watched appellant on the monitor pull a black handgun from his waistband and fire the first shot at her mother and the second shot into the window under the carport into the living room where the children were sleeping. Appellant knew that Tiara, Kiara, and children were in the house when he fired the second shot into the house. Further, the medical examiner opined that Donna had been shot from within one to three feet away. Thus, viewing the evidence in the light most favorable to the State, we hold that substantial evidence supports the verdict and affirm.

III. *Prior Bad Acts*

Next, appellant argues that the circuit court erred in allowing Tiara to testify regarding the August 2, 2022, and September 27, 2022, incidents in violation of Arkansas Rules of Evidence 404(b) and 403. He more specifically argues that the prior bad acts were not independently relevant to the main issue but were introduced to merely prove that he was a criminal. Appellant explains that the prior incidents related to Tiara and therefore were not relevant to prove his intent to shoot Donna. Moreover, he argues that the incidents were

9

"more confusing and prejudicial than probative." Appellant finally argues that any error could not be held harmless because the evidence was prejudicial and confused the jury regarding who the victim was in this case and because the evidence against him was not overwhelming. We disagree.

The admission or rejection of testimony is a matter within the circuit court's sound discretion and will not be reversed on appeal absent a manifest abuse of that discretion and a showing of prejudice to the defendant. *Gonzales v. State*, 2019 Ark. App. 600, 589 S.W.3d 505. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Id.*

Arkansas Rules of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Therefore, evidence is not admissible under Rule 404(b) simply to show a prior bad act. *Vance v. State*, 2011 Ark. 243, 383 S.W.3d 325. Rather, the test for admissibility under Rule 404(b) is whether the evidence is independently relevant, which means it must have a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Id.* Any circumstance that links a defendant to the crime or raises a possible motive for the crime is independently relevant and admissible under Rule 404(b). *Id.*

10

The analysis of whether evidence is admissible under Rule 404(b) is not resolved in a vacuum. *Gonzales*, *supra*. While evidence of other crimes or bad acts may be independently relevant and therefore admissible under Rule 404(b), that evidence must also be probative and satisfy Rule 403. This court gives considerable leeway to the circuit court to determine whether the circumstances of the prior crimes and the crimes at hand are sufficiently similar to warrant admission under Rule 404(b). *See Vance*, *supra*; *Sasser v. State*, 321 Ark. 438, 902 S.W.2d 773 (1995). When offered as Rule 404(b) evidence, the prior bad act need not have the degree of similarity that is required for evidence of modus operandi. *Fells v. State*, 362 Ark. 77, 207 S.W.3d 498 (2005).

Arkansas Rule of Evidence 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Our supreme court has noted that evidence offered by the State in a criminal trial is likely to be prejudicial to the defendant to some degree, otherwise it would not be offered. *Vance*, *supra*; *Rounsaville v. State*, 2009 Ark. 479, 346 S.W.3d 289. Nevertheless, the evidence should not be excluded under Rule 403 unless the defendant can show that the evidence lacks probative value in view of the risk of unfair prejudice. *Vance*, *supra*. This court reviews a circuit court's ruling under Rule 403 for an abuse of discretion. *Id.* While the Rule 404(b) evidence here may have been prejudicial, as most 404(b) evidence is, the question under Rule 403 is whether its probative value was substantially outweighed by the danger of unfair prejudice.

We agree with the State that the evidence here was independently relevant under Rule 404(b) and that its probative value was not substantially outweighed by the danger of unfair prejudice. Contrary to his argument, appellant's previous conduct toward Tiara was directly related to his conduct on October 29, 2022. Appellant was charged with and convicted of first-degree murder, terroristic act, and six counts of aggravated assault against Tiara, Kiara, and the four children inside the house. In other words, Donna was not the only victim as appellant attempts to allege. The evidence of appellant's previous two attempts to force contact with Tiara and his attempt to shoot at Tiara's vehicle when he failed to succeed were independently relevant to prove his motive and intent in Donna's murder as well as his lack of mistake or accident in the commission of the terroristic act and aggravated assaults. On October 29, 2022, just like before, appellant insisted on talking to Tiara. However, after Donna stood in his way and repeatedly told him to leave, appellant shot her and then shot into the house when he knew Tiara, Kiara, and the children were inside. Accordingly, we cannot say that the circuit court abused its discretion in admitting this evidence.

Moreover, we agree with the State that any error was harmless. We have held that even if a circuit court errs in admitting evidence, when the evidence of guilt is overwhelming and the error is slight, we can declare that the error was harmless and affirm the conviction. *Williams v. State*, 2016 Ark. App. 507, 505 S.W.3d 234. Here, overwhelming evidence supported appellant's convictions. Tiara positively identified appellant as the man whom she saw shoot her mother and fire a second shot into the living room of the house. The jury

12

also saw the surveillance video from the neighbor's house that corroborated Tiara's testimony. As such, even if there was any error in admitting the evidence about the incidents that occurred on August 2, 2022, and September 27, 2022, the error was harmless, and we affirm.

IV. *Sentencing Order*

Finally, we note that appellant's sentencing order contains a clerical error that must be corrected. Although it is undisputed that appellant was sentenced to serve an aggregate of 780 months' imprisonment and the sentencing order accurately reflects his sentences for each conviction, the sentencing order erroneously calculates that appellant was sentenced to serve an aggregate of 1212 months' imprisonment. We therefore remand for the circuit court to correct the amended sentencing order. *See Palmer v. State*, 2023 Ark. App. 178, 663 S.W.3d 436 (remanding the case to the circuit court for the limited purpose of entering an amended sentencing order that corrects a clerical error).

Affirmed; remanded to correct sentencing order.

ABRAMSON and VIRDEN, JJ., agree.

*Dusti Standridge*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.