

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–14–1103

| | |
|---|---|
| AARON KEITH HUGHES<br>APPELLANT | **Opinion Delivered** June 17, 2015 |
| V. | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT<br>[NO. 30CR–14–007–1] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE CHRIS E WILLIAMS, JUDGE |
| | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## BART F. VIRDEN, Judge

On May 27, 2014, a Hot Spring County Circuit Court jury found Aaron Keith Hughes guilty of second-degree domestic battery. He was sentenced to six years in the Arkansas Department of Correction and was ordered to pay restitution in the amount of $752.85. A judgment was filed on May 30, 2014, and a timely notice of appeal followed.

Hughes's attorney has filed a motion to be relieved as counsel and a no-merit brief pursuant to *Anders v. California*, 386 U.S. 738, (1967), and Ark. Sup. Ct. R. 4–3(k) (2010), in which counsel asserts that there is no issue of arguable merit to support an appeal. Counsel provided his client with a copy of the motion and brief. Hughes did not file any pro se points for reversal, and the State elected not to file a brief with our court.

*Facts*

SLIP OPINION

On May 25, 2014, immediately before the trial was set to begin, the circuit court held a hearing to address Hughes's request for a continuance. Hughes asserted that because he had conditionally retained counsel of his choice, Shane Ethridge, to replace his appointed attorney, Gregory Crain, he should be granted a continuance so that Ethridge could defend him on the charge brought against him.[1] Hughes stated that he could pay Ethridge $1500 if the continuance was granted but that Ethridge had not been officially retained at that time. Previously, Hughes had sworn an affidavit that he was indigent. The court denied Hughes's request.

The trial took place immediately after the hearing. At the trial, the victim, Kyra Zatarain, described the events of the evening of June 16, 2013. Zatarain testified that after vacationing together in California, she and Hughes had arrived home, and she was cooking dinner when Hughes's cousin became ill in the bathroom. When Zatarain tried to assist Hughes's cousin, Hughes refused to allow Zatarain to help and then became very angry. She testified that he pushed her up against the bathroom wall and choked her. Zatarain testified that later that evening, as the argument continued outside in the carport, he choked her again and then threw her against fence. She testified that she lost consciousness at some point in the evening. She stated that when she went to the doctor the next day, she was immediately transported to an orthopedic surgeon. She testified that her shoulder was injured so badly that it required surgery where four inches of bone was removed and that she also had a broken

---

[1] Ethridge could not be present at the hearing on that day, but Hughes asserted Ethridge would represent Hughes if a continuance was granted.

arm. Zatarain testified that she also suffered cuts, bruises and damage to her esophagus from Hughes strangling her and that she had permanent scars. At the time of trial, Zatarain was still in physical therapy. She testified that she could not work because of her injuries, and she no longer was able to play ball with her sons or participate in other normal activities. She testified that she had not been able to drive for six months after the incident. Zatarain testified that she also suffered emotional trauma and was in therapy for that as well.

Zatarain's son, seventeen-year-old Dakota Wilkinson, also testified. He stated that he saw Hughes choke his mom after she tried to help Hughes's cousin, and then later heard his mother and Hughes arguing. Wilkinson testified that he heard a loud banging noise, and when he went into his mom's bedroom to check on her, the dresser was broken and his mother was lying on the floor. He testified that when he reached his mother's room, Hughes walked away. He testified that his mother and Hughes argued again outside in the carport, and while he was watching through the kitchen window, he saw his mother's body hit the a fence. He testified that he ran outside to help her, asked Hughes to leave their home, and then put his mom in her bed. Wilkinson testified that shortly thereafter, his mother got out of bed to talk to Hughes and that Hughes threatened them with violence if they sought help. Wilkinson testified that Hughes then began to pack up his belongings, which took between thirty and forty minutes. Wilkinson testified that he went back inside, and Zatarain and Hughes were outside talking. He testified that was when he heard a gunshot and went outside to check on them again. Wilkinson testified that Hughes said the gun had accidentally gone off, and that he convinced Hughes it was time to leave because the police would probably be

3

there soon to investigate. Wilkinson testified that Hughes left at that time.

Ashlee Brown, a former coworker of Zatarain's and former classmate of Hughes's, testified that during a conversation earlier that year Hughes recounted to her that he had thrown a woman into a fence after they had gotten into an argument.

At the end of the State's presentation of evidence, and then again at the end of all of the evidence, counsel for Hughes made a three-part motion for a directed verdict, challenging the sufficiency of the evidence that Hughes caused Zatarain's injury, that the injury was serious, and that the he and Zatarain were in a dating relationship and cohabitating. The motions were denied.

*Standard of Review and Applicable Law*

A request to withdraw on the ground that the appeal is wholly without merit shall be accompanied by a brief including an abstract and addendum. Ark. Sup. Ct. R. 4–3(k)(1). The brief shall contain an argument section that consists of a list of all rulings adverse to the defendant made by the circuit court on all objections, motions and requests made by either party with an explanation as to why each adverse ruling is not a meritorious ground for reversal. *Id*; see also *Eads v. State*, 74 Ark. App. 363, 47 S.W.3d 918 (2001). This framework ensures that indigents are afforded their constitutional rights. *Campbell v. State*, 74 Ark. App. 277, 279, 47 S.W.3d 915, 917 (2001). In furtherance of the goal of protecting these constitutional rights, it is the duty of both counsel and of this court to perform a full examination of the proceedings as a whole to decide if an appeal would be wholly frivolous. *See id*.



*Continuance and New Counsel*

The first adverse ruling concerned Hughes's request for a continuance in order to retain different counsel. Whether to grant or deny a motion for continuance is within the sound discretion of the trial court, and we will not reverse the court's decision absent an abuse of discretion amounting to a denial of justice. *Anthony v. State*, 339 Ark. 20, 22, 2 S.W.3d 780, 781 (1999). Additionally, appellant must show that he suffered prejudice as a result of the denial of the motion: "To prevail in arguing for reversal on denial of a motion for a continuance, a criminal defendant must show prejudice that amounts to a denial of justice." *White v. State*, 370 Ark. 284, 292, 259 S.W.3d 410, 416 (2007).

Our supreme court has repeatedly held that a motion to change counsel is properly treated as a motion for continuance since a change of attorneys so close to trial would require the granting of one. *Leggins v. State*, 271 Ark. 616, 609 S.W.2d 76 (1980). The refusal to grant a continuance in order for the defendant to change attorneys rests within the discretion of the trial judge, and the decision will not be overturned absent a showing of abuse. *Cooper v. State*, 317 Ark. 485, 879 S.W.2d 405 (1994). The burden of establishing such abuse rests squarely on the shoulders of the appellant. *Leggins*, *supra*; *Edwards v. State*, 321 Ark. 610, 615, 906 S.W.2d 310, 313 (1995).

The circuit court found that not only had Ethridge not yet been retained as counsel, the only evidence concerning Hughes's ability to pay Ethridge was Hughes's affidavit of indigency filed on February 25, 2014, which heavily implied that Hughes was unable to pay an attorney. The circuit court also noted that the request was made very late. It was the day

of trial, that the jury had been called, and they were ready to proceed. Furthermore, Hughes presented no evidence that he suffered prejudice resulting from the circuit court denying his request for a continuance.

Counsel's brief adequately explains why this adverse ruling does not constitute a meritorious ground for reversal.

*Sufficiency of the Evidence*

The second adverse ruling, a three-part motion for a directed verdict, concerned three elements of Hughes's second-degree domestic battery charge: that Hughes had intent to cause injury, that the injury was serious and that there was a familial relationship between himself and Zatarain. After a careful review of the abstract, addendum and record, we conclude that any argument related to the sufficiency of the evidence would not form a meritorious basis for appellate review, and we affirm.

A motion for a directed verdict or dismissal is a challenge to the sufficiency of the evidence. *Green v. State*, 79 Ark. App. 297, 87 S.W.3d 814 (2002). When reviewing a denial of a directed verdict, we look at the evidence in the light most favorable to the State. *Darrough v. State*, 330 Ark. 808, 810, 957 S.W.2d 707, 708 (1997). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Killian v. State*, 60 Ark. App. 127, 959 S.W.2d 432 (1998). Evidence is substantial when it is forceful enough to compel a conclusion and goes beyond mere speculation or conjecture. *Britt v. State*, 334 Ark. 142, 974 S.W.2d 436 (1998).



*Intent to Cause the Injury*

The first element of the circuit court's denial of the directed verdict concerns the statutory requirement that Hughes had intent to cause physical injury. Arkansas Code Annotated section 5-26-304(a)(1) (Repl. 2006) provides that a person commits domestic battery in the second degree if, with the purpose of causing physical injury to a family or household member the person causes serious injury to that person. Intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Taylor v. State*, 77 Ark. App. 144, 72 S.W.3d 882 (2002). A presumption exists that a person intends the natural and probable consequence of his acts. *Bell v. State*, 99 Ark. App. 300, 306, 259 S.W.3d 472, 476 (2007). A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl.2006).

The testimony presented at the trial was sufficient to show Hughes's intent to cause injury. Zatarain testified she was thrown, choked, and hit by Hughes. Wilkinson also testified that he saw his mother hitting the fence, and that he witnessed Hughes holding his mother against the bathroom wall and again later against the brick wall with his hands around her neck. Ashlee Brown testified that Hughes told her that he threw a woman into a fence after arguing. Counsel's brief adequately explains why this is not a meritorious ground for relief.

*Seriousness of the Injury*

The second aspect of the circuit court's denial of the directed verdict concerns the

7

statute's requirement that Zatarain's injuries be serious. Serious physical injury is defined as physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ. Ark. Code Ann. § 5-1-102(21) (Repl. 2006). Expert medical testimony is not required to prove serious physical injury, as the finder of fact may use its common knowledge to determine whether such injury occurred. *Johnson v. State*, 26 Ark. App. 286, 764 S.W.2d 621 (1989). Similarly, it is not necessary that the impairment be permanent, but merely protracted. *See Britt v. State*, 83 Ark. App. 117, 118 S.W.3d 140 (2003); *Bell v. State*, 99 Ark. App. 300, 305, 259 S.W.3d 472, 475 (2007).

Zatarain was admitted to the hospital and had to have surgery resulting from her injuries. At the time of trial, nearly a year after the night in question, she testified that she was still in physical therapy because of the injuries she sustained and had not yet been able to resume her normal life. Medical bills amounting to more than $12,000 and photographs that confirm the seriousness of the injuries were admitted into evidence.

*Family or Household Member*

The third aspect of the circuit court's denial of the directed verdict concerns the requirement of the statute that there must be a familial relationship. Again, we find no meritorious ground.

In Arkansas Code Annotated section 5-26-302(2)(F) (Repl. 2006), the term "family or household member" is defined as persons who presently or in the past have resided or cohabited together. "Family or household member" also includes "Persons who are presently

or in the past have been in a dating relationship together." Ark. Code Ann. § 5-26-302 (2)(H). The definition of "dating relationship" is "a romantic or intimate social relationship between two (2) individuals that is determined by examining the following factors: (i) The length of the relationship; (ii) The type of the relationship . . ." Ark. Code Ann. § 5–26–302(1)(A)(I) and (ii).

Substantial evidence supports the trial court's denial of the directed verdict motion. The fact that the parties dated for two–and–a–half weeks was uncontroverted. There was also testimony from Zatarain's son that it took time and effort to pack up all of Hughes's things from their home, heavily implying that he had at least partially moved in.

After a full examination of the record under the proper standards, we hold that counsel provided a compliant "no merit" brief demonstrating that an appeal would be wholly without merit, and further, that counsel's motion to be relieved should be granted.

Affirmed; motion to withdraw granted.

GLADWIN, C.J., and BROWN, J., agree.

*Gregory Crain*, for appellant.

No response.