Cite as 2025 Ark. App. 46

# ARKANSAS COURT OF APPEALS
DIVISION III
№. CR-24-273

| | |
|---|---|
| PAUL BROWN, JR.<br><br>APPELLANT<br><br>V.<br><br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered January 29, 2025<br><br>APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17CR-23-265]<br><br>HONORABLE MARC MCCUNE, JUDGE<br><br>AFFIRMED; REMANDED TO CORRECT SENTENTING ORDER |

**CINDY GRACE THYER, Judge**

Appellant Paul Brown, Jr., was convicted by a Crawford County jury of one count of aggravated assault on a family or household member and sentenced as a habitual offender to twelve years in the Arkansas Division of Correction. On appeal, he raises two points: (1) the State failed to prove that the victim was a family or household member; and (2) the circuit court erred in allowing the State to elicit testimony regarding prior bad acts. We find no error and affirm.

The testimony presented at trial established the following. Kathryn Bentley testified that she and Brown had been in a dating relationship that began in July 2021 and continued "on and off again" until March 2023. She said their relationship had been "on and off" around twenty times during that time period. Bentley explained that Brown had always been

concerned that she was somehow hacking into his phone. On March 24, 2023, Brown picked her up from her house, and they drove to a hotel, where they talked, had sex, and eventually argued over Bentley's phone. Bentley tried to leave, but Brown told her she was not going to leave with the phone. When she attempted to leave, Brown grabbed her throat so tightly she could not breathe in or out. As she started to pass out, she realized she still had her phone, so she threw it away from her. Brown released her, and she bolted out the door and ran to the front desk. As Bentley hid in the office, she saw Brown's car leave, and she asked the attendant to call 911. Officers arrived on the scene within fifteen to twenty minutes, interviewed Bentley, and took photographs of her injuries. Brown was charged with, and subsequently convicted of, one count of aggravated assault on a family or household member.

I. *Sufficiency of the Evidence*

In his first point on appeal, Brown argues that the circuit court erred in denying his directed-verdict motion. On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *McClendon v. State*, 2019 Ark. 88, 570 S.W.3d 450. In reviewing this challenge, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.*, 570 S.W.3d at 452. We will affirm the verdict if substantial evidence supports it. *Ward v. State*, 2023 Ark. 158, 676 S.W.3d 270. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* This court does not weigh the evidence presented at trial or assess the

2

credibility of the witnesses because those are matters for the fact-finder. *Halliburton v. State*, 2020 Ark. 101, at 10, 594 S.W.3d 856, 863.

In his challenge to the sufficiency of the evidence, Brown contends that the State failed to prove that Bentley was a family or household member. Arkansas Code Annotated section 5-26-306(a)(3) (Supp. 2023) provides that a person commits aggravated assault on a family or household member if, under circumstances manifesting extreme indifference to the value of human life, the person purposely impedes or prevents the respiration of a family or household member . . . by applying pressure on the chest, throat, or neck . . . of the family or household member."

The relevant definition of "family or household member" is found in section 5-26-302(2)(H) (Supp. 2023) and includes "[p]ersons who are presently or in the past have been in a dating relationship together." "Dating relationship," in turn, is defined in section 5-26-302(1) as follows:

> (1)(A) "Dating relationship" means a romantic or intimate social relationship between two (2) individuals that is determined by examining the following factors:
>
> (i) The length of the relationship;
>
> (ii) The type of the relationship; and
>
> (iii) The frequency of interaction between the two (2) individuals involved in the relationship.
>
> (B) "Dating relationship" does not include a casual relationship or ordinary fraternization between two (2) individuals in a business or social context[.]

On appeal, Brown argues that Bentley's testimony failed to establish that they were in a "dating relationship." We disagree. This court has previously noted that the legislature "expressly included a broad definition" of dating relationship in an effort to curb domestic violence. *Fuller v. State*, 99 Ark. App. 264, 266, 259 S.W.3d 486, 488 (2007). Bentley's testimony established that she and Brown were in a dating relationship. She expressly replied yes to the State's question, "Were you dating him?" She said the relationship had been "on and off again" about twenty times between July 2021 and March 2023. She said that they had had sex. On cross-examination, Brown asked Bentley, "[W]ould you describe your relationship as a long term committed relationship, dating, or . . . would you meet up and have sex?" She answered, "Dating," although she agreed that it was not a committed relationship.

Although Brown argues that the mere fact that Bentley said they were dating does not make it so, the jury was entitled to assess her credibility. *See Reed v. State*, 2011 Ark. App. 352, at 2, 383 S.W.3d 881, 883 ("Witness credibility is an issue for the fact-finder, who is free to believe all or a portion of any witness's testimony and whose duty it is to resolve questions of conflicting testimony and inconsistent evidence."). Assessing the evidence in the light most favorable to the State, as we are required to do, *see Dean v. State*, 2021 Ark. App. 182, there was sufficient evidence from which the jury could reasonably conclude that Brown and Bentley were in a dating relationship. *See, e.g.*, *Hughes v. State*, 2015 Ark. App. 378, 467 S.W.3d 170 (finding dating relationship when parties were together for two and a half weeks); *Webster v. State*, 2009 Ark. App. 579 (finding dating relationship when

relationship lasted five months and parties would not see each other for a week or two at a time). Because the existence of a dating relationship is the only element of the aggravated-assault statute that Brown challenges, we hold that substantial evidence supports his conviction.

## II. *Rule 404(b) Testimony*

In his second argument on appeal, Brown contends that the circuit court erred in allowing evidence of prior bad acts in violation of Arkansas Rule of Evidence 404(b). Prior to trial, as the parties were discussing a motion in limine that Brown had filed, the State commented that there were "no 404(b) witnesses" but that Bentley "has prior abuse from the defendant and . . . she would likely testify about those encounters during her testimony." Brown argued that while that testimony might be relevant during sentencing, he contended that "unless it's for one of the specific enumerated reasons [in Rule 404(b)], like motive or opportunity or lack of mistake, that it would not be admissible because it would just be used to show that he's done it in the past, therefore, he's done it now." The court noted that it could be used to show purpose, asking the State if it planned to use the testimony "to show that his intent is to choke her out based on the prior incident." The State said it was, and the court then ruled that "depending on the nature [of the testimony], I'm . . . leaning towards allowing it, but I want to hear the nature of that prior offense before making final judgment."

At trial, after Bentley testified about the incident and the photographs of her injuries were introduced, the following colloquy occurred:

STATE: Ms. Bentley, has anything like this happened between you and Mr. Brown before?

BENTLEY: Yes.

STATE: Okay. What happened on March the 24th, was that--

DEFENSE: Your Honor, may we approach?

COURT: Okay.

DEFENSE: I believe this is where we are getting in to the past of my client.

STATE: And we are showing the intent that any of this is not an accident, that this was not a mistake, this is a pattern that they had of abuse during their relationship and it shows his intent to do that that night.

COURT: I think it goes to the purpose and I am going to allow it.

DEFENSE: Your Honor, just for efficiency's sake, we would ask for a standing objection for the remainder of questions that are about his past.

COURT: It will be admitted over your objections.

STATE: Ms. Bentley, I believe you--the question I asked you is, has this happened between you and Mr. Brown before, and you testified, yes.

BENTLEY: Yes.

STATE: What happened on March the 24th, is that the worst that's ever happened, or was that--is it different than what had happened before?

BENTLEY: It's the worst.

Brown argues on appeal that the circuit court erred in allowing this testimony because, contrary to the State's suggestion, it did not show his intent but was instead

intended to show that he acted in conformity with his previous behavior in violation of Rule 404(b).[1]

Arkansas Rule of Evidence 404(b) allows evidence of other crimes, wrongs, or acts to be admitted for the purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." However, evidence is not admissible under Rule 404(b) to prove the character of a person in order to show that the person acted in conformity therewith. For evidence to be admissible under Rule 404(b), it must have independent relevance. *Morris v. State*, 367 Ark. 406, 240 S.W.3d 593 (2006). Evidence admitted under Rule 404(b) is independently relevant if it has a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Id.*

While evidence of other crimes or bad acts may be admissible under Rule 404(b), to be probative under Rule 403, the prior crime or bad act must be similar to the crime charged. *Davis v. State*, 362 Ark. 34, 46, 207 S.W.3d 474, 483 (2005). When offered as Rule 404(b) evidence, the prior bad act need not have the degree of similarity that is required for evidence

---

[1]When the court instructed the jury at the conclusion of the trial, the jury was informed that "evidence of other alleged crimes, wrongs, or acts of Paul Brown, Jr., may not be considered by you to prove the character of Paul Brown, Jr., in order to show he acted and conformed to wit. This evidence is not to be considered to establish a particular trait or character that he may have, nor is it to be considered to show that he acted similar or accordingly on the day of the incident. This evidence is merely offered as evidence of motive, opportunity, intent, preparation, plan, knowledge, identity, action of the state, or accident, et cetera. Whether any alleged crime, wrongs, or acts have been committed is for you to determine."

of modus operandi. *Fowlkes v. State*, 2020 Ark. 56, 592 S.W.3d 702. The prior bad act does not have to be identical, just similar. *Id.*

Circuit courts have broad discretion in deciding evidentiary issues, including the admissibility of evidence under Rule 404(b). The circuit court's decision will not be reversed absent an abuse of discretion. *Rounsaville v. State*, 2009 Ark. 479, 346 S.W.3d 289. The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Hortenberry v. State*, 2017 Ark. 261, at 10, 526 S.W.3d 840, 847. The degree of similarity between the circumstances of prior crimes and the present crime required for admission of evidence under Rule 404(b) is a determination that affords considerable leeway to the circuit court and may vary with the purpose for which the evidence is admitted. *Self v. State*, 2022 Ark. App. 479, 655 S.W.3d 567.

Here, although the circuit court's analysis of the issue was lacking in detail, the evidence that Brown had previously choked Bentley was nonetheless independently relevant to show that he intended to choke her on this occasion. *See Fowlkes*, *supra* (testimony regarding circumstances under which defendant had raped another woman under similar circumstances was admissible to demonstrate his intent, motive, or plan).

Moreover, even if the court's decision to admit Bentley's testimony were erroneous, any error was slight. *See Lowery v. State*, 2019 Ark. 332, at 8, 586 S.W.3d 644, 649 ("Where evidence of guilt is overwhelming and the error slight, we can declare the error harmless and affirm."). In addition to Bentley's testimony that Brown had choked her, the officers who

arrived on the scene within minutes of the incident testified that they saw redness around Bentley's neck, and photographs were introduced that were consistent with the injuries described. Thus, even if the limited information provided by Bentley in her single affirmative response was introduced in error, it was harmless when considered against the other evidence of guilt presented. Given the overwhelming evidence of guilt, we affirm Brown's conviction for aggravated assault on a family or household member.

Although we affirm Brown's conviction, we must address two errors on the sentencing order that require correction. First, the sentencing order reflects that Brown was found guilty at a jury trial and sentenced by the court; however, Brown was sentenced by the same jury that found him guilty. Second, the sentencing order further reflects that Brown was sentenced as a habitual offender under Arkansas Code Annotated section 5-4-501(b) (Supp. 2023), the "large habitual" sentencing provision. The amended information, however, charged Brown as a "small habitual" offender pursuant to section 5-4-501(a), asserting that he had been previously convicted of more than one but less than four felonies. At sentencing, the State introduced evidence of three prior felony convictions. Therefore, the sentencing order should be corrected to show that Brown was sentenced under section 5-4-501(a).

Affirmed; remanded to correct sentencing order.

ABRAMSON and GLADWIN, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.